STATE OF HAWAII, Plaintiff-Appellee, *v.* TIMOTHY E. LOWTHER, Defendant-Appellant

NO. 11153

(CRIMINAL NO. 85-1068)

AUGUST 7, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Defendant Timothy E. Lowther (Defendant) appeals his conviction for driving under the influence of intoxicating liquor (DUI) in violation of Hawaii Revised Statutes (HRS)§ 291-4(a) (1) (1985).[1] The appeal raises the following question: Whether the approval of the intoxilyzer model 4011AS breath testing machine (Intoxilyzer) by the Director of the State Department of Health (Director) bars a DUI defendant from attacking the general reliability of the Intoxilyzer by expert testimony.[2] Our answer is no. We therefore vacate the judgment of conviction and remand the case for retrial.

### I.

On July 15, 1985, Defendant was arrested for DUI and submitted to an Intoxilyzer breath test. The test result showed 0.11 percent by weight of alcohol in Defendant's blood.[3] During the jury

---

[1] The jury found Defendant guilty of violating Hawaii Revised Statutes (HRS) §§ 291-4(a) (1) and -4(a) (2) (1985) which read as follows:

§ 291-4 Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

    (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

    (2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

Based on the State's motion, however, the trial court dismissed the HRS § 291-4(a) (2) count and amended the judgment to indicate a conviction under the HRS § 291-4(a) (1) count only.

[2] An Intoxilyzer breath test is relevant in an HRS § 291-4(a) (1) prosecution because HRS § 291-5(a) (1985) provides:

§ 291-5 Evidence of intoxication. (a) In any criminal prosecution for a violation of section 291-4, ten-hundredths per cent or more by weight of alcohol in the defendant's blood within three hours after the time of the alleged violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation.

[3] Section 11-111-2(b) (3) of Chapter 111 of Title 11 of the State Administrative Rules requires the testing of the Intoxilyzer for accuracy with a minimum of two reference samples of known alcohol concentration and provides that "[t]he results of such analysis must agree with the reference sample value within the limits of plus or minus one hundredths percent weight per volume[.]" Thus, the Rules provide for a margin of error of ± 0.01 percent.

trial the test result was admitted into evidence without objection by Defendant. As the State's expert witness, police criminalist Milton Chang, a certified Intoxilyzer operator/supervisor, testified that, in his opinion, the Intoxilyzer "is a reliable instrument." 12/11/85 Tr. Vol. III at 61.

After the State rested, the trial court ruled on the pending "State's Motion in Limine to Exclude the Testimony of Dr. Frajola." The court determined that Dr. Walter J. Frajola would not be permitted to testify regarding the reliability of the Intoxilyzer but would be allowed to testify only as to "how the [breath] test was conducted" on Defendant and "as to the effects of alcohol on the human body." 12/16/85 Tr. at 16.

During the direct examination of Dr. Frajola,[4] despite its earlier ruling on the State's motion in limine, the trial court asked Dr. Frajola for his opinion regarding the general reliability of the Intoxilyzer. Dr. Frajola responded as follows:

> It doesn't accurately measure the amount of alcohol in a person's blood. It can make an accurate measurement of a breath analysis, but the conversion from a breath result to a blood alcohol concentration is in tremendous error.

> \* \* \*

> [I]t is an inaccurate measurement, when you refer it to a blood alcohol concentration in a specific individual.

12/17/85 Tr. at 153.

Upon the State's objection, the court excused the jurors and Dr.

---

[4]Regarding his qualifications, Walter J. Frajola testified that he graduated from Hamline University in 1938 with a B.S. degree in chemistry and education, and from the University of Illinois with a M.S. degree in chemistry in 1947 and a Ph.D. degree in chemistry in 1950. He was an assistant professor in the Department of Medicine and Department of Physiological Chemistry at Ohio State University. In about 1958, he became a full professor in the Department of Pathology and head of the clinical chemistry laboratory of the Ohio State University Hospital. He retired in 1977 as an emeritus professor.

He was licensed by the State of Ohio to do alcohol analyses from 1969 through 1979. He has been a member of the Ohio Academy of Science since 1950, a fellow since 1954.

He purchased and has owned an Intoxilyzer Model 4011AS since October 1983. He has conducted numerous tests and experiments on that machine.

Frajola from the courtroom and heard the arguments of the parties. After the jurors returned to the courtroom, the court struck its last question and Dr. Frajola's answer and stated to the jury:

> Furthermore, the Court would like to instruct the jury that the question of the reliability of the Intoxilyzer has already been determined in this state by our State Supreme Court and has been laid to rest. It is reliable and, therefore, the last question and answer is to be completely disregarded by the jury.

*Id.* at 163.

The matter, however, was not laid to rest. During its deliberations, the jury made the following request and inquiry:

> 2. May we have the decision of the Supreme Court ruling pertaining to the use of the Intoxilyzer.
>
> 3. Can the jury overule [sic] a decision of the Supreme Court?

Record at 237. The trial court refused the jury's request and admonished the jurors that "they are not to question the law in the case as stated by the Court[.]" 12/19-20/87 Tr. at 6.

The jury found Defendant guilty as charged, and this appeal followed.

## II.

The due process guarantee of a fair trial under the constitutions of both the United States and Hawaii requires that "criminal . defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta,* 467 U.S. 479, 485, 104 S. Ct. 2528, 2532, 81 L. Ed. 2d 413, 419 (1984); *State v. Bullen,* 63 Haw. 27, 620 P.2d 728 (1980). We hold that the trial court unconstitutionally excluded relevant expert testimony of Dr. Frajola proffered by Defendant.

### A.

The State argues that the exclusion of Dr. Frajola's testimony was proper because, as indicated by the trial court, our supreme court has determined in *State v. Tengan,* 67 Haw. 451, 691 P.2d 365 (1984) that intoxilyzers are reliable devices. Both the trial court and the State have misread *Tengan.*

The issue in *Tengan* was whether "the use of the Intoxilyzer as a breath-testing device [had or] had not been authorized by a properly adopted rule." *Id.* at 454, 691 P.2d at 368. The supreme court held that "the Director of Health approved the use of the Intoxilyzer in accord with the requirements of Chapter 47 [of the Public Health Regulations] and informed the Director of Transportation[,]" *Id.* at 461, 691 P.2d at 372, whose letter to the Chief of the Honolulu Police Department "[i]n effect . . . constituted the Director of Transportation's 'approval' of a breath test[.]" *Id.* at 462, 691 P.2d at 373.

One of the foundational prerequisites for the admission of the Intoxilyzer test result into evidence is a "showing that the testing method is reliable[.]" *People v. Bowers,* 716 P.2d 471, 473 (Colo. 1986). The effect of *Tengan* is to satisfy the "reliability" prong of the foundational requirements for admissibility.[5] *See State v. Souza,* 6 Haw. App. ___, 732 P.2d 253 (1987). It relieves the State of the burden of presenting expert testimony regarding the general reliability of the Intoxilyzer as a breath testing device in each DUI prosecution for purposes of admissibility of the test result. Nothing in *Tengan* suggests that the general reliability of the Intoxilyzer is an unquestioned fact.

B.

Citing *State v. Vega,* 12 Ohio St. 3d 185, 465 N.E.2d 1303 (1984),[6] the State contends that the reliability of the Intoxilyzer has been legislatively resolved and is not subject to attack by Defendant. The *Vega* line of reasoning may be summarized as follows:

An accused may not use expert testimony to attack the general reliability of intoxilyzers as valid, reliable breath-testing machines, in view of the fact that the General Assembly has legislatively provided for the admission of such tests if analyzed

---

[5] To satisfy the other prongs of the foundational prerequisites for admissibility, "there must be sufficient foundational evidence showing that (1) the Intoxilyzer was in proper working order; (2) its operator was qualified; and (3) the test was properly administered." *State v. Souza,* 6 Haw. App. ___, ___, 732 P.2d 253, 257 (1987).

[6] In *State v. Vega,* 12 Ohio St. 3d 185, 465 N.E.2d 1303 (1984), the expert witness whose testimony was excluded, was the same Dr. Frajola as in this case.

in accordance with methods approved by the Director of Health.

*City of Columbus v. Day,* 24 Ohio App. 3d 173, 174, 493 N.E.2d 1002, 1003 (1985).

In our view, even if legislation validly provides for the admissibility of Intoxilyzer test results, their admissibility does not automatically equate with the sufficiency of the evidence to establish an unadmitted material fact. *See* Commentary to Rule 401, Hawaii Rules of Evidence (HRE), HRS Chapter 625 (1985). "[T]he Legislature may not declare the weight to be given to evidence or what evidence shall be conclusive proof of an issue of fact." *State v. Burling,* 224 Neb. 725, 730, 400 N.W.2d 872, 876 (1987). *See also State v. Boehmer,* 1 Haw. App. 44, 613 P.2d 916 (1980). "[I]t is a judicial function to determine whether the evidence, if believed, is sufficient to sustain a conviction." *Burling,* 224 Neb. at 730, 400 N.W.2d at 876. Thus, the test results are not "unassailable." *Keel v. State,* 609 P.2d 555, 557 (Alaska 1980). Moreover, we doubt that the Intoxilyzer's general reliability may be judicially noticed as an adjudicative fact by the trial court. *See* Rule 201, HRE.

Thus, we side with other courts that have recognized the defendants' right to challenge the general reliability of breath testing devices. For example, an Alaskan court has held:

Even after the admission of the breathalyzer test results, the burden is still upon the municipality to convince the jury that the breathalyzer test is accurate and that the defendant's blood or breath alcohol was above the prohibited level at the time of driving. Should the defendant have reason to believe that the test results inaccurately reflect his actual blood or breath alcohol concentrations, he can adequately confront the test through the usual tools which he has at his disposal in confronting any witness or evidence. He can rely on the fact that the municipality has the burden of proof, he can rely on cross examination, or he can present evidence on his own.

*Cooley v. Municipality of Anchorage,* 649 P.2d 251, 255 (Alaska App. 1982). Although *Cooley* referred to a breathalyzer and not the Intoxilyzer, the above principles are applicable here. *See Commonwealth v. Smythe,* 23 Mass. App. Ct. 348, 502 N.E.2d 162 (1987);

*Hounsell v. Commissioner of Public Safety,* 401 N.W.2d 94 (Minn. App. 1987); *State v. Burling, supra.*

We find the dissenting opinion in *State v. Vega*[7] very persuasive. It states:

> Under the Constitutions of the state of Ohio and the United States all persons accused of crime have the right to present their own evidence including expert testimony . . . . There is no prohibition against the presentation of expert medical testimony by the accused to show the nonexistence of any nexus between the test results and the physical condition of the accused.

> \* \* \*

> The rule-making power of the Director of Health can never deprive a defendant of his constitutional right to present all relevant evidence in his defense to the crime with which he is charged.

12 Ohio St. 3d at 190, 465 N.E.2d at 1308.

### III.

The State asserts that the trial court's error was harmless beyond a reasonable doubt because there was sufficient evidence, other than the Intoxilyzer test result, to convict Defendant under HRS § 291-4(a)(1). We disagree.

The record seems to indicate that the jury reached its verdict on the HRS § 291-4(a) (1) count before it began its deliberation on the HRS § 291-4(a) (2)[8] count and made the request and inquiry referred to above. However, the record discloses that the trial court instructed the jury as follows:

> The fact that 0.10 percent or more by weight of alcohol was in the defendant's blood within three hours after the time of the

---

[7]The Ohio Supreme Court split 4-3 in the *State v. Vega* decision. The majority issued a per curiam opinion. Justice Clifford F. Brown wrote the dissenting opinion.

[8]*See* note 1, *supra.*

violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath may be considered as competent evidence that the defendant was under the influence of intoxicating liquer [sic] at the time of violation.[9]

12/18/85 Tr. at 13 (footnote added). We are not convinced that the jury's guilty verdict on the HRS § 291-4(a) (1) count was untainted by the foregoing instruction and the Intoxilyzer test result in evidence which Dr. Frajola was not permitted to question.

The general rule is that "any violation of a defendant's constitutional rights is presumed prejudicial unless rebutted by the prosecution." *State v. Caraballo,* 62 Haw. 309, 323, 615 P.2d 91, 100 (1980). In our view, the State has failed to rebut the presumption.

## IV.

The disposition of this appeal does not require our resolution of the other issues raised by Defendant.

Judgment of conviction vacated and case remanded for retrial.

*Richard K. Perkins (Renee M.L. Yuen* with him on the briefs; *Yuen & Perkins,* Attorneys at Law, A Law Corporation, of counsel) for defendant-appellant.

*Peter Van Name Esser,* Deputy Prosecuting Attorney *(Arthur E. Ross,* Deputy Prosecuting Attorney, and *Myles Breiner,* Law Clerk, on the brief) for plaintiff-appellee.

---

[9]*See* note 2, *supra.*