STATE OF HAWAII, Plaintiff-Appellee, *v.* RICHARD HOLLAND GATES, also known as Richard Holland Gate, Defendant-Appellant

NO. 13265

(CRIMINAL NO. 87-1508)

JUNE 26, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Defendant Richard Holland Gates (Defendant) appeals his jury conviction for driving under the influence of intoxicating liquor (DUI) in violation of Hawaii Revised Statutes (HRS) §§ 291-4(a)(1) and -4(a)(2) (1985).[1] Defendant contends that the trial court erred in admitting into evidence the test result obtained from the use of an intoxilyzer model 4011AS (Intoxilyzer), a breath-testing instrument. He also contends that the trial court erred in denying his motion for judgment of acquittal[2] made after the close of the State's case. We hold that these contentions are without merit, and affirm.

---

[1] Hawaii Revised Statutes (HRS) § 291-4 (1985) provides in part:

Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] Defendant Richard Holland Gates (Defendant) actually made a "motion to dismiss." However, during oral argument Defendant indicated that it was a Hawaii Rules of Penal Procedure Rule 29(a) motion for judgment of acquittal.

## I.

After being arrested for DUI and transported to the police station, Defendant consented to take a breath test. Honolulu Police Department (HPD) police matron Sylvia Dawson (Dawson) administered the breath test on Defendant on Intoxilyzer No. 102376 at 12:15 a.m. on June 17, 1987. The test result indicated a blood alcohol concentration (BAC) of 0.126 percent.[3]

During the trial, Dawson testified that (1) she was a certified Intoxilyzer operator; (2) she observed Defendant for twenty minutes to ensure that Defendant neither ingested nor regurgitated anything; (3) she meticulously followed the HPD Intoxilyzer Operational Checklist sequentially in administering the breath test; (4) the accuracy verification test of Intoxilyzer No. 102376 was done with a beam attenuator[4] bearing an identical serial number; and (5) that Intoxilyzer No. 102376 operated properly, without an error light going on, with a BAC readout of 0.126 percent.

HPD criminalist Gilbert Chang (Chang) testified that he was a certified Intoxilyzer operator/supervisor. He further testified that on June 13, 1987, he tested Intoxilyzer No. 102376 for accuracy with two simulator solutions of 0.10 and 0.20 percent alcohol concentration, respectively, and also with the beam attenuator. He concluded that the instrument was accurate on that date.

HPD criminalist Milton Hong (Hong), also a certified Intoxilyzer operator/supervisor, testified that on June 17, 1987, the same day, but after Defendant was administered the breath test, he tested Intoxilyzer No. 102376 for accuracy with two simulator solutions of 0.05 and 0.30 percent alcohol concentration, respectively,

---

[3] Citing sections 11-111-2.1(g) and 11-111-5(i) of the Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration, Defendant argues that the test result is 0.12 percent, not 0.126 percent. Section 11-111-5(i), which is applicable to chemical laboratory methods other than the use of a breath-testing instrument, provides that the result shall be expressed "to the second decimal place as found[,]" with an example that a found result of 0.277 percent shall be reported as 0.27 percent. However, section 11-111-2.1(g), which applies to results obtained from breath-testing instruments, does not include any decimal place limitation.

[4] With respect to accuracy verification testing of the Intoxilyzer 4011AS with a beam attenuator, see State v. Christie, 7 Haw. App. ___, 764 P.2d 1245, aff'd, 70 Haw. 158, 766 P.2d 1198 (1988), cert. denied, ___ U.S. ___, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

and with the beam attenuator. He found the instrument to be accurate. He stated that the Intoxilyzer has a margin of error of plus or minus 0.01 percent. He did not specify or explain, however, the reasons or bases for that margin of error.

On cross-examination, Hong explained that although the Intoxilyzer tests an individual's breath and not his blood, it converts an individual's breath alcohol concentration to a corresponding BAC by virtue of a conversion factor, a partition ratio. He stated that the Intoxilyzer utilizes a partition ratio of 2,100 parts of alcohol in the blood to one part of alcohol in the breath, i.e., 2,100 to 1. He further stated that due to physiological differences in individuals, "[t]here may be differences in the partition ratio for a small exception of the population." July 21, 1988 Transcript B at 21. Hong further testified on cross-examination as follows:

> A. Well, there are a few studies which have shown a range [in the partition ratio] of eleven hundred [to one] to three thousand [to one], but of course these studies have been shown to be grossly erroneous based on the other studies that have been produced over fifty years.

>              *     *     *

> A. He [Mr. A.W. Jones] came up with a ratio or range of nineteen hundred [to one] to twenty-four hundred [to one].
> Q. And you say that his findings are more reliable than the others?
> A. Well sir, his findings are relied upon and referred to in most of the recent literature on blood alcohol testing.

*Id.* at 22, 26-27. Hong also stated that if a person's partition ratio is 1,900 to 1 and if the Intoxilyzer indicates that his BAC is 0.10 percent, his correct BAC would be 0.09 percent.

On redirect examination, Hong testified as follows:

> A. . . . [T]he latest studies have shown sir, that this ratio twenty-one hundred to one understates the results for ninety-four percent of the population and therefore only six percent—

>              *     *     *

> A. So we can have a higher BAC [test] result in comparison to a true result for six percent of the population or six percent

of the study group, this is what the literature has shown in the most recent publications.

*Id.* at 57.

On recross examination, Hong stated:

A. ... The literature has shown that by utilization of the twenty-one hundred ratio to one [sic] in the design of these instruments, individuals would understate their true blood alcohol by twelve percent.

\* \* \*

A. ... The true average has been calculated by Mr. Jones to be twenty-three hundred to one.

*Id.* at 59-60.

The test result indicating a BAC of 0.126 percent was admitted into evidence over Defendant's objection. The jury returned a guilty verdict against Defendant, and he timely appealed.

## II.

Utilizing a test result of 0.12 percent rather than 0.126 percent, applying the minus 0.01 percent margin of error attributable to the Intoxilyzer, then relying on the low range of 1,900 to 1 partition ratio testified to by Hong, Defendant claims that his BAC would be reduced below 0.10 percent. He therefore contends that the trial court erred in admitting the test result into evidence. We hold, · however, that since the State laid a sufficient foundation, the Intoxilyzer test result was properly admitted into evidence.

### A.

In *State v. Souza*, 6 Haw. App. 554, 732 P.2d 253 (1987), we stated that before a "result of a test made out of court may be introduced into evidence, a foundation must be laid showing that the test result can be relied on as a substantive fact." *Id.* at 558, 732 P.2d at 256. Regarding the admissibility of an Intoxilyzer test result, we required the following foundational requisites. First, there must be a showing of the Intoxilyzer's "reliability as a breath testing instrument." *Id.* at 558, 732 P.2d at 257. Second, with respect to the test result from the use of a particular Intoxilyzer at a particular

time, there must be a "showing that (1) the Intoxilyzer was in proper working order; (2) its operator was qualified; and (3) the test was properly administered." *Id.* (citations omitted).

Additionally, we held that "in meeting the foundational prerequisites for the admission of the Intoxilyzer test result there must be a showing of strict compliance with those provisions of the [Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration] which have a direct bearing on the validity and accuracy of the test result." *Id.* at 559, 732 P.2d at 257 (footnote omitted).

### B.

In contending that the test result was inadmissible, Defendant essentially is attacking the Intoxilyzer's reliability as a breath-testing instrument because of the utilization of the 2,100 to 1 partition ratio. In our view, however, the Intoxilyzer's reliability has been established for the limited foundational purpose of having its test result admitted into evidence.

Initially, we note that "[t]he technique of testing breath samples for blood alcohol content has general acceptance in the scientific community[.]" *United States v. Smith,* 776 F.2d 892, 898 (10th Cir. 1985). *See also Commonwealth v. Sesler,* 358 Pa. Super. 582, 585, 518 A.2d 292, 294 (1986).

We next note that our supreme court stated that "the use of the Intoxilyzer had been approved by the Director of Health and it met the Federal Standard for Devices to Measure Breath Alcohol." *State v. Tengan,* 67 Haw. 451, 462, 691 P.2d 365, 373 (1984). Recently, citing *Tengan,* the supreme court reiterated that the Intoxilyzer 4011AS was "approved for use by the county police departments[.]" *State v. Christie,* 70 Haw. 158, 163, 766 P.2d 1198, 1201 (1988), *cert. denied,* ____ U.S. ____, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989).

We held in *State v. Lowther,* 7 Haw. App. ____, 740 P.2d 1017 (1987), however, that such approval of the Department of Health does not bar a DUI defendant from more specifically challenging the Intoxilyzer's reliability by expert testimony. We stated that an Intoxilyzer test result is "not 'unassailable[,]' " *id.* at ____, 740 P.2d at 1020 (quoting *Keel v. State,* 609 P.2d 555, 557 (Alaska 1980) ),

and that a DUI defendant has a "constitutional right to present all relevant evidence in his defense[.]" *Id.* at ____, 740 P.2d at 1021 (quoting *State v. Vega,* 12 Ohio St. 3d 185, 190, 465 N.E.2d 1303, 1308 (1984) (dissenting opinion) ).

Defendant therefore had the right through cross-examination of Hong to question the reliability of the Intoxilyzer, which utilizes a partition ratio of 2,100 to 1, and thereby to question the accuracy of the test result. However, we hold that Hong's partition ratio testimony goes to the weight the jury should accord the Intoxilyzer test result with respect to its accuracy, not to the admissibility of the test result. *See State v. Johnson,* 717 S.W.2d 298 (Tenn. Crim. App. 1986) (involving an Auto-Intoximeter model AI-1000 breath-testing device which utilizes a partition ratio of 2,100 to 1). *See also People v. McDonald,* 206 Cal. App. 3d 877, 254 Cal. Rptr. 384 (1988) (issue on appeal was not the admissibility of the breath test result, but the jury instruction regarding the 2,100 to 1 partition ratio); *State v. McCarty,* 434 N.W.2d 67 (S.D. 1988) (issue on appeal was the jury instructions relating to the 2,100 to 1 partition ratio, not the admissibility of the intoxilyzer test results).

### C.

The foundational evidence relating to the use of Intoxilyzer No. 102376 by Dawson on June 17, 1987, in testing Defendant's breath was sufficient to show that (1) Intoxilyzer No. 102376 was in proper working order; (2) Dawson was a qualified operator; and (3) she administered the test properly. Moreover, the record indicates that there was strict compliance with the provisions of section 11-111-2.1 of the Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration having a direct bearing on the validity and accuracy of the Intoxilyzer test result.

### D.

Accordingly, we hold that the trial court did not err in admitting the Intoxilyzer test result into evidence.

## III.

After the State rested, Defendant moved for judgment of acquittal,[5] which was denied. Defendant contends that the trial court's denial of the motion was error. We disagree.

We have held that a defendant who presents evidence after a denial of a motion for judgment of acquittal made after the close of the State's case waives any error in the trial court's ruling. *State v. Kreps,* 4 Haw. App. 72, 661 P.2d 711 (1983); *State v. Emmsley,* 3 Haw. App. 459, 652 P.2d 1148 (1982); *State v. Halemanu,* 3 Haw. App. 300, 650 P.2d 587 (1982). Here, Defendant not only presented evidence after the denial of his motion for judgment of acquittal made at the close of the State's case, but also failed to move for judgment of acquittal after the close of all the evidence. Thus, Defendant waived his earlier objection to the sufficiency of the State's evidence.

Moreover, based on the testimony of the arresting officer and the Intoxilyzer test result admitted into evidence, there was sufficient evidence for the jury to convict Defendant for DUI under both HRS §§ 291-4(a)(1) and -4(a)(2).

Affirmed.

*Kazuo Oyama* for defendant-appellant.

*James M. Anderson,* Deputy Prosecuting Attorney, for plaintiff-appellee.

---

[5] *See* note 2, *supra.*