**STATE OF HAWAII,** Plaintiff–Appellee, v. **JEFFREY A. YOUNG,** Defendant–Appellant

NO. 13891

(CR. NO. 88–1899)

JULY 26, 1990

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant–Appellant Jeffrey A. Young (Defendant) was convicted by a jury of driving under the influence of intoxicating liquor (DUI) in violation of Hawaii Revised Statutes (HRS) § 291–4(a)(2) (1985)[1] (driving with a blood alcohol level of .10 percent or more).[2] On appeal, Defendant contends that the trial court reversibly erred in (I) admitting the breath test result from an intoxilyzer model 4011AS (Intoxilyzer) into evidence; (II) its rulings regarding the testimony of the State of Hawaii's (State) witness, Honolulu Police Department (HPD) criminalist Claire Chun (Chun); (III) refusing to give certain jury instructions and giving certain instructions over Defendant's objection; and (IV) denying

---

[1] Hawaii Revised Statutes (HRS) § 291–4(a) (1985) provides as follows:

**Driving under influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] The complaint charged defendant Jeffrey A. Young with violation of HRS § 291–4(a)(1) (Count I) and HRS § 291–4(a)(2) (Count II). The trial court declared a mistrial as to Count I because the jury could not reach a verdict on that count.

Defendant's motion to dismiss with prejudice Count I (violation of HRS § 291–4(a)(1)) of the complaint on the ground of double jeopardy. We affirm.

## FACTS

On June 4, 1988, Defendant was arrested for DUI. He consented to take a breath test. HPD Officer William Wardle (Wardle), a certified Intoxilyzer operator, administered the breath test to Defendant. At trial, Wardle testified that (1) he observed Defendant for fifteen minutes prior to administering the breath test to ensure that Defendant did not eat, drink, smoke, or regurgitate anything; (2) he carefully and sequentially followed the seventeen–step Intoxilyzer Operational Checklist in administering the breath test; (3) the calibration verification test of Intoxilyzer No. 103292 was done with a beam attenuator bearing an identical serial number; and (4) Intoxilyzer No. 103292 was working properly because the alphanumerics of the test results were printed out in proper order on the printout card and no error light appeared.

The trial court qualified Chun as "a qualified and certified operator supervisor of the intoxilyzer machines and as an expert criminalist regarding the intoxilyzer instrument who is competent to testify about the accuracy and reliability of the Honolulu Police Department's intoxilyzer instruments." May 23, 1989 Transcript at 107. Chun testified that on June 2 and 14, 1988, she tested Intoxilyzer No. 103292 for accuracy with two simulator solutions of .05 and .30 percent alcohol concentration, respectively. The temperature of the solutions was $34°$ centigrade. On both dates, Chun also used the Intoxilyzer's beam attenuator to check it for accuracy. Chun concluded that based on these tests, Intoxilyzer No. 103292 was working properly and accurately on June 4, 1988. She further testified that the Intoxilyzer has a margin of error of ±.01 percent.

On cross–examination, Defendant questioned Chun in depth about the Intoxilyzer's use of a 2,100 to 1 breath to blood partition coefficient or ratio to calculate a person's blood alcohol concentration (BAC). Questions regarding the beam attenuator were also directed at Chun.

Over Defendant's objection, the court admitted into evidence the breath test result showing a BAC of .204 percent.

The jury found Defendant guilty of Count II (driving with a BAC of .10 or more), but was unable to reach a verdict on Count I (driving under the influence). Over Defendant's objection, the court declared a mistrial as to Count I.

## DISCUSSION
### I.

Defendant first contends that the trial court erred in admitting the Intoxilyzer test result into evidence. He argues as follows: (1) in laying a proper foundation for the admission of the Intoxilyzer test result into evidence, the State must show strict compliance with the provisions of the State Department of Health's Rules for the Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration (Rules) which have a direct impact on the validity and accuracy of the test result, *State v. Souza*, 6 Haw. App. 554, 559, 732 P.2d 253, 257 (1987); (2) the Rules mandate that breath testing instruments and their accessories be evaluated and approved; (3) there was no showing that the State Department of Health (DOH) evaluated the Intoxilyzer before its approval or approved the beam attenuator; and (4) therefore strict compliance with the Rules as required by *Souza* was lacking and the breath test result was improperly admitted. The argument is without merit.

In *State v. Tengan*, 67 Haw. 451, 691 P.2d 365 (1984), the supreme court stated that "the Director of Health approved the use of the Intoxilyzer in accord with the requirements of Chapter 47 [of

the Public Health Regulations which were superseded by the Rules] and informed the Director of Transportation of the approval on December 16, 1980." *Id.* at 461, 691 P.2d at 372 (footnote omitted). Section 11–111–2.1(a) of the Rules provides that breath–testing instruments approved by the DOH "as of December 31, 1985, shall continue to be approved[.]"

In *State v. Christie*, 70 Haw. 158, 766 P.2d 1198 (1988), *cert. denied*, ____ U.S. ____, 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989), the supreme court reiterated:

> The department [DOH] found the Intoxilyzer and its related accessories met the prescribed standards in December of 1980, and the instrument and the accessories have since been used by the county police departments to measure blood alcohol concentration.

*Id.* at 168, 766 P.2d at 1204. The supreme court also held:

> That the instrument [Intoxilyzer] and related accessories have been found accurate when used as intended by their designer and manufacturer is . ... implicit in the department's approval.

*Id.* at 172, 766 P.2d at 1206. The beam attenuator is a related accessory to the Intoxilyzer.

In our view, *Tengan* and *Christie* lay to rest Defendant's contention that the DOH did not evaluate and approve the Intoxilyzer and the beam attenuator.

Accordingly, the trial court did not err in admitting the Intoxilyzer test result into evidence.

## II.

Defendant next contends that the trial court erred in precluding him from cross–examining Chun as to why she described the

beam attenuator as a lens. He also claims that the court erred in allowing Chun, over his objection, to testify regarding articles and studies she had read concerning the 2,100 to 1 partition ratio or coefficient. We find no error.

A.

In *State v. Faulkner*, 1 Haw. App. 651, 624 P.2d 940 (1981), we stated:

> The law is well–settled that the admissibility of evidence, generally, and the scope of cross–examination at trial are matters exercised within the discretion of the trial court.
>
> * * *
>
> The trial court's exercise of its discretion to limit the scope of cross–examination will not be ruled as reversible error when it limits irrelevant and repetitious questions by counsel which do not result in any manifest prejudice to the defendant.

*Id.* at 654–55, 624 P.2d at 943–44 (citations omitted).

In *State v. Christie, supra,* the supreme court concluded that a beam attenuator, "a circular piece of quartz that absorbs a known quantity of infrared radiation emitted by a particular source[,]" came within *The Random House Dictionary of the English Language* definition of "lens." 70 Haw. at 169, 766 P.2d at 1204–05. Since the issue of whether the beam attenuator is a lens was decided in *Christie,* Defendant's questions relating to a beam attenuator vis–a–vis a lens were irrelevant. Moreover, the barring of those questions did not result in manifest prejudice to Defendant.

Accordingly, the court did not abuse its discretion on this point.

## B.

Defendant claims that Chun "had no expertise in the field of science involved in the partition coefficient." Therefore, Defendant argues that the court should not have allowed her to testify about articles and studies regarding the partition ratio or coefficient. We disagree.

At trial, Chun was qualified as a "certified operator supervisor of the [Intoxilyzer] . . . competent to testify about the accuracy and reliability of the [Intoxilyzer]." May 23, 1989 Transcript at 107. Defendant sought to challenge the accuracy and reliability of the Intoxilyzer by cross–examining Chun about the use of the 2,100 to 1 breath to blood partition ratio in the Intoxilyzer.

Clearly, an expert may consider or rely upon "any scientific, technical, or professional text, treatise, journal or similar publication" in forming an opinion and may be cross–examined about those publications. Hawaii Rules of Evidence (HRE) Rule 702.1(b). Here, Chun's opinion regarding the use of the 2,100 to 1 partition ratio in Intoxilyzers and the reliability of the ratio was based upon her research and reading of relevant articles and studies. As a qualified expert regarding the accuracy and reliability of the Intoxilyzer, Chun was qualified to render an opinion regarding the 2,100 to 1 partition ratio, which had a bearing on the Intoxilyzer's accuracy and reliability. When cross–examined, she testified about the articles and studies of the partition ratio she considered and relied upon to form her opinion. Moreover, Chun's opinion testimony "assist[ed] the trier of fact to understand the evidence or to determine a fact in issue [the accuracy and reliability of the Intoxilyzer]." HRE Rule 702.

We conclude that the trial court did not err in permitting Chun to testify about the articles and studies she considered and relied upon in forming her opinion testimony.

## III.

Regarding the giving or failure to give jury instructions, the standard of review is "whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent or misleading." *State v. Halemanu*, 3 Haw. App. 300, 306, 650 P.2d 587, 592 (1982).

## A.

Defendant contends that regarding the elements of the HRS § 291–4(a)(2) offense, the trial court incorrectly refused to instruct the jury that a "finding of a mens rea as to the element of operating a vehicle [was required]." We disagree.

HRS § 702–204 (1985) provides that when a statute is silent as to the state of mind required to establish an element of an offense, the element is established by proving that "a person acts intentionally, knowingly, or recklessly." However, HRS § 702–212(2) (1985) states that the state of mind requirements do not apply to:

A crime defined by statute other than this [Hawaii Penal] Code, insofar as a legislative purpose to impose absolute liability for such offense or with respect to any element thereof plainly appears.

By enacting HRS § 291–4(a)(2), "the legislature permitted proof of DUI by merely showing that a defendant drove a vehicle with a BAC of 0.10 percent or more." *State v. Wetzel*, 7 Haw. App. ____, ____, 782 P.2d 891, 895 (1989) (footnote omitted). Thus, the legislative purpose of HRS § 291–4(a)(2) was "to impose absolute liability for such offense or with respect to any element thereof," as provided in HRS § 702–212(2). Accordingly, we stated in *State v. Christie*, 7 Haw. App. ____, ____, 764 P.2d 1245, 1246, *aff'd*, 70 Haw. 158, 766 P.2d 1198 (1988), *cert. denied*, ____ U.S. ____, 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989), that

DUI has been "a *per se* offense" under HRS § 291–4(a)(2) since 1983.

The trial court did not err in refusing to instruct the jury that a finding of *mens rea* was required under HRS § 291–4(a)(2).

### B.

Defendant also contends that the trial court erred "in refusing to instruct the jury as to timeliness, venue, and jurisdiction" as to the HRS § 291–4(a)(2) offense. This contention is meritless.

HRS § 701–114(1) (1985) requires proof beyond a reasonable doubt of facts establishing jurisdiction, venue, and timeliness. However, we held in *State v. Correa*, 5 Haw. App. 644, 706 P.2d 1321 (1985), that where there is uncontradicted and undisputed evidence of timely prosecution and proper venue in the record, the trial court's failure to instruct the jury regarding those items is "error that is harmless beyond a reasonable doubt." *Id.* at 650, 706 P.2d at 1325. *See also* Hawaii Rules of Penal Procedure (HRPP) Rule 52(a) (an error which does not affect substantial rights shall be disregarded).

In this case, the record clearly indicates that the prosecution was timely and the trial court had proper venue and jurisdiction. Moreover, Defendant did not dispute any of these items at trial.

Consequently, the trial court did not commit reversible error in this regard.

### C.

Based on Chun's testimony, the trial court instructed the jury that the Intoxilyzer has "a recognized margin of error of one one–hundredth, that is .01 percent[.]" May 24, 1989 Transcript at 52.

Defendant sought to have the court instruct the jury that "there are one or more margins of error in an intoxilyzer test[,]" and that all margins of error must be deducted from the Intoxilyzer test result. The court refused to give Defendant's instruction. We find no error in the refusal.

Chun testified that the Intoxilyzer has a margin of error of ±.01 percent. This margin of error is inherent in the Intoxilyzer and is applicable to every breath test. In addition to the ±.01 percent, there was no evidence of any margin of error inherent in the Intoxilyzer due to the 2,100 to 1 partition ratio. Chun testified that based on studies, the National Safety Council and the National Highway Transportation Safety Administration determined 2,100 to 1 "as a fair partition ratio for the general population" and that "this value was to be used in the manufacture of breath testing instruments in the United States." May 23, 1989 Transcript at 136. Chun also testified that a person's partition ratio may vary from the 2,100 to 1 value and that, if a person's partition ratio was lower than 2,100 to 1, his test would register a false high.

Based on the foregoing evidence in the record, the court did not err in refusing to instruct the jury about an additional margin of error arising from the use of the 2,100 to 1 partition ratio in the Intoxilyzer.

We stated in *State v. Gates*, 7 Haw. App. ____, 777 P.2d 717 (1989), that the testimony regarding the 2,100 to 1 partition ratio "goes to the weight the jury should accord the Intoxilyzer test result with respect to its accuracy[.]" *Id.* at ____, 777 P.2d at 721. Defense counsel fully argued to the jury the possibility of error in the Intoxilyzer test result because the decision to use the 2,100 to 1 partition ratio was based on "a good statistic," but "not science." The trial court instructed the jury "to determine the weight to be given any evidence properly admitted," and "to determine whether the Intoxilyzer machine used in this case was reliable." May 24, 1989 Transcript at 53.

We conclude that the court did not err in refusing to instruct the jury as to "one or more margins of error."

## D.

Over Defendant's objection, the trial court gave its Special Instruction Nos. 10 and 11 (No. 10 and No. 11). Those instructions read as follows:

[No. 10]

The State Department of Health has issued rules governing the use of chemical tests of blood alcohol levels. These rules are known as Title 11, Chapter 111, and must be complied with before any breath or blood test may be admitted into evidence against the defendant.

The Court has admitted the test performed on the defendant in this case.

It is up to the jury to determine the weight to be given any evidence properly admitted, including tests for blood alcohol levels.

[No. 11]

The Intoxilyzer machine 4011AS, has been approved by the Director of Health, State of Hawaii, and has met the Federal Standards for devices to measure breath alcohol and approved by the Director of [T]ransportation, State of Hawaii, as a generally reliable breath testing instrument.

Judicial notice of this fact of the general reliability of the Intoxilyzer does not establish this as an unquestioned fact, and may be challenged. It is for the jury to determine whether the Intoxilyzer machine used in this case was reliable.

May 24, 1989 Transcript at 53.

Defendant contends that these instructions are erroneous and prejudicial because they "created a mandatory presumption as to the accuracy of the Intoxilyzer test result." Conversely, the State argues that the instructions "were legally correct and Defendant suffered no prejudice therefrom."

We do not agree with either Defendant or the State. In our view, the instructions dealing with the admissibility of the Intoxilyzer test result and judicial notice of the approval and general reliability of the Intoxilyzer were unnecessary and inappropriate.

HRE Rule 104(a) states that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court[.]" HRE Rule 1102 provides that "[t]he court shall instruct the jury regarding the law applicable to the facts of the case, but shall not comment upon the evidence." The giving of Nos. 10 and 11 violated both HRE Rules 104(a) and 1102.

The admissibility of the Intoxilyzer test result was wholly within the province of the court to determine. Consequently, the portions of No. 10 relating that the Rules must be complied with before a test result may be admitted into evidence and that the court did admit the test result into evidence were unnecessary and inappropriate in a jury instruction.

In *State v. Lowther*, 7 Haw. App. 20, 740 P.2d 1017 (1987), we stated:

> One of the foundational prerequisites for the admission of the Intoxilyzer test result into evidence is a "showing that the testing method is reliable[.]" *People v. Bowers*, 716 P.2d 471, 473 (Colo. 1986). The effect of *Tengan* is to satisfy the "reliability" prong of the foundational requirements for admissibility. *See State v. Souza*, 6 Haw. App. [554], 732 P.2d 253 (1987). It relieves the State of the burden of presenting expert testimony regarding the general reliability of the Intoxilyzer as a breath

testing device in each DUI prosecution for purposes of admissibility of the test result. Nothing in *Tengan* suggests that the general reliability of the Intoxilyzer is an unquestioned fact.

*Id.* at 24, 740 P.2d at 1020 (footnote omitted). In the case at bar, the trial court took judicial notice of *Tengan* solely for the purpose of admitting the Intoxilyzer test result into evidence because "we doubt that the Intoxilyzer's general reliability may be judicially noticed as an adjudicative fact[.]" *Lowther,* 7 Haw. App. at 25, 740 P.2d at 1020. Thus, the portion of No. 11 concerning judicial notice that the Intoxilyzer was approved by the DOH dealt with the admissibility of the test result and, consequently, was also unnecessary and inappropriate in a jury instruction.

The portions of both instructions deemed unnecessary also constituted unwarranted comments on the evidence in violation of HRE Rule 1102. *See Ray v. State,* 749 S.W.2d 939 (Tex. App. Ct. 1988) (where an instruction singles out a piece of evidence for heightened scrutiny by the jury, it is an improper comment on the weight of evidence).

Notwithstanding the unnecessary and inappropriate portions of the instructions, No. 10 closed with an admonition that it was for the jury to determine the weight to be given to the evidence, including the test result. Likewise, No. 11 concluded with an admonition that the jury was to determine whether the Intoxilyzer used in the case was reliable. These statements effectively preserved the issue of the reliability of the Intoxilyzer and accuracy of the breath test result for the jury to determine. Thus, contrary to Defendant's contention, Nos. 10 and 11 did not create a mandatory presumption as to the accuracy of the test result. In our view, the admonitions and general instructions relating to the presumption of innocence and the necessity of proof beyond a reasonable doubt rendered the unnecessary and inappropriate portions of Nos. 10 and 11 harm-

less, thereby "not affect[ing] substantial rights" of Defendant. HRPP Rule 52(a).

## IV.

Finally, Defendant contends that the trial court erred in denying his motion to dismiss Count I with prejudice on the ground of double jeopardy. We hold that *State v. Grindles*, 70 Haw. 528, 777 P.2d 1187 (1989), has rendered the issue moot.

On May 24, 1989, the jury returned a verdict finding Defendant guilty of Count II, but was unable to reach a verdict as to Count I. On the same day, the court sentenced Defendant and declared a mistrial as to Count I. On June 2, 1989, the court denied Defendant's oral motion to dismiss Count I with prejudice.

Thereafter, on July 27, 1989, *Grindles* was decided. In *Grindles*, the supreme court held that "HRS § 291–4(a) provides two alternative means of proving the single offense of driving while under the influence of intoxicating liquor." *Id.* at 531, 777 P.2d at 1190 (footnote omitted).

In the case at bar, although the complaint consisted of two counts, consistent with *Grindles*, only one offense was charged. The jury found Defendant guilty of Count II, one of the alternative means of proving DUI, which we are affirming. Therefore, Count I, the other alternative means of proving DUI, which ended in a mistrial, is irrelevant and a nonissue.

Accordingly, Defendant's appeal on this point is moot.

## CONCLUSION

Finding no reversible errors, we affirm.

*Earle A. Partington* (Partington & Foley, of counsel) on the brief for defendant–appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.