881 P.2d 1240

STATE of Hawai'i, Plaintiff–Appellant,

v.

Robin R. MEZURASHI,
Defendant–Appellee.

No. 16985.

Supreme Court of Hawai'i.

Oct. 3, 1994.

James M. Anderson, Deputy Pros. Atty., City and County of Honolulu, Honolulu, for plaintiff-appellant.

S. Raymond Okuma, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiff–Appellant State of Hawai'i (Prosecution) appeals from an order dismissing the charges of driving under the influence of intoxicating liquor (DUI) and driving without lights against Defendant–Appellee Robin R. Mezurashi.

■ The issue in the instant appeal is whether the Prosecution may rely on an intoxilyzer test result to prosecute a violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (Supp.1989) when the HRS § 291–4(a)(2) (Supp.1989) charge has been dismissed. We hold that it may, and therefore, the circuit court erred when it refused to admit evidence of the intoxilyzer test result offered by the Prosecution.

Accordingly, we vacate the dismissal of Count I, DUI, in violation of HRS § 291–4(a)(1), and of Count III, driving without lights, in violation of HRS § 291–25 (1985) and remand for further proceedings consistent with this opinion.

## I. FACTS

On August 14, 1990, an indictment was filed against Mezurashi. The indictment contained three counts: DUI in violation of HRS § 291–4(a)(1) (Count I); DUI in violation of HRS § 291–4(a)(2) (Count II); and driving without lights in violation of HRS § 291–25 (Count III).

The circuit court scheduled jury selection on August 12, 1991. However, before jury selection, the deputy prosecuting attorney (prosecutor) informed the court that the Prosecution was unable to proceed on Count II—which charged Mezurashi with driving with a blood alcohol content of 0.10 percent or greater—because the police chemist was on vacation and could not verify the intoxilyzer test result. Thereafter, the court dismissed Count II with prejudice.

Regarding Counts I and III, on January 19, 1993, before commencing jury selection, the Prosecution advised the court and Mezurashi of its intent to use the intoxilyzer test result in prosecuting its case as to Count I, the § 291–4(a)(1) charge. At the pretrial conference, the prosecutor moved to introduce the intoxilyzer test result. The prosecutor also requested an interlocutory appeal if the court were inclined to deny the motion.

Mezurashi countered that because Count II had been dismissed with prejudice, any evidence supporting that charge could not be admitted with respect to Count I. Mezurashi argued that allowing the intoxilyzer test result as evidence in Count I was tantamount to allowing the Prosecution to "commence through the back door" and thus, highly prejudicial to him. Finally, Mezurashi objected to the grant of an interlocutory appeal.

The court agreed with Mezurashi and denied the Prosecution's motion to use the intoxilyzer test result as evidence in Count I. The court also denied the Prosecution's request for an interlocutory appeal and for a stay of the proceedings. Thereafter, Mezurashi moved for a dismissal of his case.

When the court asked if the Prosecution was ready to proceed without the intoxilyzer test result, the prosecutor responded that he

was "ready," but would not proceed. The court therefore granted Mezurashi's motion to dismiss the case with prejudice.

On January 29, 1993, the Prosecution filed a motion to reconsider the dismissal and the inadmissibility of the intoxilyzer test result.

The court later filed its order dismissing Counts I and III on March 22, 1993. That same day, the court also filed an order denying the Prosecution's motion for reconsideration.

The Prosecution timely appeals from: (1) the order dismissing Counts I and III; and (2) the denial of its motion for reconsideration of the order denying the motion to introduce evidence.

## II. *DISCUSSION*

■ We review an order to dismiss a criminal charge based upon the abuse of discretion standard. *State v. Moriwake,* 65 Haw. 47, 56–57, 647 P.2d 705, 712–13 (1982). Mezurashi was charged under HRS §§ 291–4(a)(1) and (2), which provide:

§ 291–4 *Driving under the influence of intoxicating liquor.* (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 percent or more, by weight of alcohol in the person's blood.

HRS §§ 291–4(a)(1) and (2) (Supp.1989).[1]

■ Subsections (1) and (2) were enacted in 1983 when the legislature amended HRS § 291–4(a) to add the provision that DUI could be proven based upon a blood alcohol content (BAC) standard. *State v. Grindles,*

70 Haw. 528, 531, 777 P.2d 1187, 1190 (1989). Since the amendment, DUI has been a *per se* offense under HRS § 291–4(a)(2). *State v. Christie,* 7 Haw.App. 368, 370, 764 P.2d 1245, 1246, *aff'd,* 70 Haw. 158, 766 P.2d 1198 (1988), *recon. denied,* 70 Haw. 661, 796 P.2d 1004, *cert. denied,* 490 U.S. 1067 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Thus,

[t]he statute provides that a person commits *the* offense of driving under the influence of intoxicating liquor if the person's conduct falls into one of two categories: (1) driving while under the influence *or* (2) driving with a blood alcohol content of 0.10 or more. A blood alcohol content of at least .10 percent is one method of proving the influence of alcohol.

*Grindles,* 70 Haw. at 531, 777 P.2d at 1189–1190 (emphasis in original) (citations omitted).

The issue in the present case is whether § 291–4(a)(1) ("A–1") and § 291–4(a)(2) ("A–2") require the use of separate evidence. Specifically, can an intoxilyzer test result, which would be used to establish an A–2 *per se* violation, be used in a prosecution of an A–1 violation, when the A–2 count has been dismissed? We answer in the affirmative.

We begin our analysis with HRS § 291–5: *Evidence of intoxication.* (a) *In any criminal prosecution for a violation of section 291–4,* ten-hundredths percent or more by weight of alcohol in the defendant's blood within three hours after the time of the alleged violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation.

(b) *In any criminal prosecution for a violation of section 291–4,* the amount of alcohol found in the defendant's blood

---

1. As amended, § 291–4(a) currently provides:
   (a) A person commits the offense of driving under the influence of intoxicating liquor if:
   (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's

normal mental faculties or ability to care for oneself and guard against casualty; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with .10 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .10 or more grams of alcohol per two hundred ten liters of breath.
HRS § 291–4(a) (Supp.1992 & Comp.1993).

within three hours after the time of the alleged violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation and shall give rise to the following presumptions:

(1) If there were five-hundredths percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor at the time of the alleged violation.

(2) If there were in excess of five-hundredths percent but less than ten-hundredths percent by weight of alcohol in the defendant's blood, such fact may be considered with other competent evidence in determining whether or not the defendant was at the time of the alleged violation under the influence of intoxicating liquor but shall not of itself give rise to any presumption.

(c) *Subsection (b) shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor at the time of the alleged violation.*

(Emphasis added.)

In *State v. Lowther,* 7 Haw.App. 20, 740 P.2d 1017 (1987), the Intermediate Court of Appeals (ICA) specifically stated that, pursuant to HRS § 291–5, "[a]n [i]ntoxilyzer breath test is relevant in an HRS § 291–4(a)(1) prosecution." *Id.* at 21 n. 2, 740 P.2d at 1018 n. 2. However, neither the ICA nor this court has yet to determine whether HRS § 291–5 allows the Prosecution to rely on an intoxilyzer test result when the A–2 charge has been dismissed.

▆▆▆ The interpretation of HRS § 291–5 is a question of law that we review *de novo. Franks v. City and County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). Our

foremost responsibility in construing HRS § 291–5 " 'is to ascertain and give effect to the intention of the legislature[,]' " obtained primarily from the language contained in the statute itself. *Id.* (citations omitted). Further, we must read the statutory language in the context of the entire statute and construe it in a manner consistent with the purpose of the statute. *Id.* at 335, 843 P.2d at 671. Where the statutory language is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. *AIG Haw. Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 633–634, 851 P.2d 321, 328 (1993).

In the instant case, HRS § 291–5 is plain and unambiguous. It provides for the use of a defendant's BAC as evidence in *any criminal prosecution for a violation of § 291–4* including both A–1 and A–2 violations. We therefore conclude that HRS § 291–5 allows the Prosecution to introduce as evidence the intoxilyzer test result to prosecute a defendant for an A–1 violation.

1.

Mezurashi, however, contends that, pursuant to Hawai'i Rules of Evidence (HRE) Rule 403,[2] it was within the circuit court's discretion to exclude evidence that would result in unfair prejudice to him. Essentially, Mezurashi claims that an A–2 charge and an intoxilyzer test result are "synonymous," such that "the charge cannot stand without the test result and the test result cannot stand without the charge[.]" Moreover, Mezurashi contends that allowing the Prosecution to use the test result to prosecute an A–1 charge is "tantamount to giving the State two bites of the apple, and thus would be unfairly prejudicial" to him. Mezurashi concludes that because the A–2 count, that is, the 0.10 percent or greater *per se* violation, was dismissed with prejudice, the intoxilyzer result cannot be used as evidence in an A–1 count.

2. HRE Rule 403 (1985) provides:
*Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.* Although relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Mezurashi's argument is without merit. There is nothing in the language of the statute or in the legislative history that indicates a legislative intent to exclude an intoxilyzer test result if the A–2 charge has been dismissed. As we stated *supra*, HRS § 291–4(a) provides two separate ways to prove a single offense of DUI, both of which may rely on an intoxilyzer test result as evidence.

■ Allowing the use of the intoxilyzer test result for both charges does not give the Prosecution "two bites of the apple." In an A–2 charge, the intoxilyzer test result alone can prove commission of a crime, *i.e.*, driving with a BAC equal to or greater than 0.10 percent.

However, under an A–1 charge, the intoxilyzer test result is simply competent evidence, which the trier of fact may consider in the context of other evidence. Because the prosecutor would have to present other evidence to establish the A–1 charge, the Prosecution is not given "two bites of the same apple."

For example, in an A–2 charge, once the intoxilyzer test result—a BAC equal to or greater than 0.10 percent—has been admitted into evidence, and, assuming the BAC is believed to be true by the trier of fact, then the prosecutor has adduced sufficient evidence to establish that the defendant has violated the *per se* offense under A–2. This, however, is not sufficient to establish an A–1 violation. In an A–1 charge, the Prosecution must also establish that the defendant was DUI, *e.g.*, he was weaving or failed the field sobriety test.

■ Moreover, in an A–1 count, Mezurashi may offer evidence that he was not "under the influence" at the time he was stopped. *Cf. State v. Lowther*, 7 Haw.App. at 26, 740 P.2d at 1021 (quoting *State v. Vega*, 12 Ohio St.3d 185, 190, 465 N.E.2d 1303, 1308 (1984)) ("There is no prohibition against the presentation of expert testimony by a defendant charged with a DUI offense to show that no nexus exists between the intoxilyzer

test result and defendant's physical condition."). Thus, while the intoxilyzer test result is competent evidence that Mezurashi was under the influence of intoxicating liquor at the time of the alleged offense, standing alone it is simply probative of an A–1 violation and does not give the Prosecution two opportunities to prosecute Mezurashi for driving with a BAC of 0.10 percent or greater.

2.

Mezurashi also cites *State v. Dow*, 72 Haw. 56, 65, 806 P.2d 402, 407 (1991), for the proposition that in dismissing the A–2 charge, the circuit court made a finding of fact regarding the intoxilyzer test result to support the dismissal, and therefore, ruled that the Prosecution could not use the intoxilyzer test result to prove that he was DUI.[3] This argument is also meritless.

Like Mezurashi, Dow was charged with violating A–1 and A–2. After the Prosecution rested, Dow moved for a judgment of acquittal. The court granted the motion as to the A–1 count only. The jury, however, was unable to reach a verdict on the A–2 count, and the court declared a mistrial. *Dow*, 72 Haw. at 58, 806 P.2d at 403. A second trial was later commenced on the A–2 count. Dow was convicted of the A–2 count by the second jury. Dow appealed his conviction contending that the second trial placed him twice in jeopardy. *Id.* Agreeing with Dow, the ICA reversed. *Id.*

We granted certiorari and held that where the trial court did not intend to dismiss the entire offense of DUI when it entered a judgment of acquittal on the A–1 count, but only intended to rule against the Prosecution with respect to one method of proving the DUI, the trial court in reality did not acquit the defendant but instead made a factual finding equivalent to a jury's special verdict. *Id.* at 63, 806 P.2d at 406. We reasoned that where the trial court did not have the authority under Hawai'i Rules of Penal Procedure (HRPP) Rule 29(a)[4] to enter a judgment on

---

**3.** Mezurashi acknowledges that the facts in *Dow* involved an acquittal of the A–1 count, rather than a dismissal as in the instant case, but argues that by dismissing the A–2 count, the circuit

court, nevertheless, made a factual finding to support the dismissal.

**4.** HRPP Rule 29(a) (1980) provides:

less than the entire offense of DUI, the judgment of acquittal was invalid. *Id.* at 65, 806 P.2d at 407.

*Dow,* however, is inapposite to the present case. Here, the circuit court could not have made a finding of fact with respect to the intoxilyzer test result because the court was never presented with any evidence of the intoxilyzer test result. According to the record, the A–2 count was dismissed because the Prosecution was unable to lay a proper foundation to admit the intoxilyzer test result.

Moreover, the record indicates that there was neither a motion to suppress nor any attempt by the prosecutor to have the evidence admitted. Thus, it was not possible for the circuit court to make a finding as to the intoxilyzer test result because the evidence was never admitted.

Accordingly, we hold that the intoxilyzer test result is not rendered inadmissible simply because the A–2 charge has been dismissed. Therefore, the circuit court erred when it refused to allow the prosecutor to rely on the intoxilyzer test result in order to establish a § 291–4(a)(1) violation.

### 3.

Consequently, the circuit court erred when it dismissed Counts I and III. Clearly, the court felt it had no choice once the prosecutor refused to proceed without the intoxilyzer test result. The prosecutor, however, had no other alternatives. If he proceeded to trial and Mezurashi was adjudicated not guilty, the prosecutor would not be able to appeal the circuit court decision regarding the admissibility of the intoxilyzer test result. HRS § 641–13(2).[5] Thus, because the court denied the Prosecution's request for a stay in order to file an interlocutory appeal, the prosecutor was forced to have the case dismissed in order to perfect an appeal.

### 4.

Recently in *State v. Nakata,* 76 Hawai'i 360, 878 P.2d 699 (1994), we held that there was no right to a jury trial under the United States and Hawai'i Constitutions for a first-offense DUI under HRS § 291–4, as amended by Act 128, 1993 Haw.Sess.Laws 179. Moreover, we held that the elimination of the right to a jury trial may be applied retroactively to alleged offenses occurring prior to the effective date of the Act—May 21, 1993. *Id.* at 378, 878 P.2d at 717. Therefore, in light of *Nakata,* if Mezurashi was charged with first-offense DUI, then he is not entitled to a jury trial in the circuit court.

Accordingly, we remand this appeal to the District Court of the First Circuit to determine whether this case involves a charge of first-offense DUI.

### III. *CONCLUSION*

Based on the foregoing discussion, we: (1) vacate (a) the order dismissing Counts I and III, (b) the circuit court order denying the Prosecution's motion to introduce the intoxilyzer test result in the A–1 trial, and (c) the denial of the Prosecution's motion for reconsideration and; (2) remand for proceedings consistent with this opinion.

---

Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses alleged in the charge after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right.

5. HRS § 641–13(2) (Supp.1992) provides in relevant part that the prosecution may appeal "[f]rom an order or judgment ... dismissing the case where the defendant has *not* been put in jeopardy[.]" (Emphasis added.)