TERRITORY OF HAWAII, BY EDWARD N. SYLVA, ITS ATTORNEY GENERAL *v.* VIOLET LUA MAKAAA, ADMINISTRATRIX OF THE ESTATE OF LUCY KEALOHA, DECEASED.

No. 4064.

SUBMITTED APRIL 28, 1959.                DECIDED MAY 5, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

238

OPINION OF THE COURT BY STAINBACK, J.

This is an action in assumpsit brought by the Territory against the defendant-appellant, administratrix of her deceased sister's estate, for payment of the sum of $1,629.75, being the amount of financial assistance rendered the deceased by the department of public welfare. The claim was not filed against the estate within the four-month period prescribed by statute for creditors' claims against the estate of a decedent. The Territory's claim was rejected by the defendant-administratrix, whereupon this suit was instituted. The facts in the case are undisputed and the case was submitted to the court upon stipulation. Judgment was rendered in favor of the Territory as prayed for and defendant appeals to this court from this judgment.

The defendant admits the circuit court followed the decision of *Minister* v. *Parke, Administrator,* 4 Haw. 366, but asks this court to reconsider the doctrine of that case "in the light of 75 years development away from it in many mainland jurisdictions." She states the modern rule is the sounder one and makes for more orderly administration of estates.

The case of *Minister* v. *Parke, Administrator, supra,* held that the statute limiting the time within which claims may be presented against the estates of deceased persons is no bar to a claim by the government. This case, although brief, gives a very thorough discussion of the history and reasons back of this rule. It cites and quotes with approval the following from Judge Story in the case of *United States* v. *Samuel Hoare, Administrator,* 2 Mason 312:

" 'Now, I think it may be laid down as a safe proposition, that no Statute of Limitations has been held to apply to actions brought by the Crown, unless there has been an express provision including it. For it is said that where a statute is general,

and thereby any prerogative, right, title, or interest is divested or taken from the King, in such case the King shall not be bound, unless the statute is made by express words to extend to him.' "

Judge Harris also quotes the following from *United States* v. *Thompson*, 98 U. S. 498:

" 'The rule of *nullum tempus occurrit regi* has existed as an element of the English law from a very early period. It is discussed in Bracton and has come down to the present time. *Limitations derive their authority from Statutes.* The King was held never to be included *unless expressly named.* No laches was imputable to him; these exemptions were founded upon considerations of public policy.' " (Emphasis added.)

There is a split of authority upon the point as to whether a state government is barred like any other creditor but the decisions of the Federal courts are uniformly that the Federal Government is not barred from enforcing its claim by not filing its claim against decedent's estate within the specified time.

"It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing is rights." (*U. S.* v. *Summerlin,* 310 U. S. 414, 416, citing numerous authorities.)

As to the contention that the decision in the *Parke* case is 75 years old and the so-called modern rule is the sounder rule and makes for the more orderly administration of estates, there are two answers. In the first place, much can be said both for and against a statute of limitations applied to a sovereign power. Limitations of actions are statutory in origin and are passed to encourage promptness in bringing actions to enforce one's rights, and on the further theory that claims that are valid are not usually allowed to remain neglected for an unreasonably long period of time if the right to sue thereon exists. The so-called short limitation statutes, such as actions against executors or administrators, is to compel claimants promptly to seek enforcement of their claims when rejected in order that there may be a speedy ascertainment of the liabilities of the deceased, as well as to expedite closing the estate.

Thus, as stated in the *Parke* case, *supra,* "Some excellent reasons have been adduced before us why we should adopt the rule that the statute in question shall be of universal application against the Government as against every one else. These reasons have had the greatest consideration by us, and we may say have had great weight in our minds. But we think that more injury will be done by setting up the new rule than by adhering to that which has prevailed for centuries in the countries from which for the most part we derive our jurisprudence. If the Legislature shall be of the opinion that these statutes ought to apply with equal force to the Government as to citizens, they can easily modify the statutes so as to make the point indisputable."

Another reason is that the *Parke* decision is an interpretation of the statute, and the contention that it should be overruled because of its antiquity is really an argument to the contrary. The legislature must be presumed familiar with the construction of its own laws, and it has enacted and reenacted various statutes relative to limitation on filing claims and has made no change whereby the government would come within the provisions of such statutes.

"* * * The fact that the legislature has not seen fit by amendment to express disapproval of a contemporaneous or judicial interpretation of a particular statute, has been referred to as bolstering such construction of the statute, or as persuasive evidence of the adoption of the judicial construction. In this respect, it has been declared that where a judicial construction has been placed upon the language of a statute for a long period of time, so that there has been abundant opportunity for the lawmaking power to give further expression to its will, the failure to do so amounts to legislative approval and ratification of the construction placed upon the statute by the courts, and that such construction should generally be adhered to, leaving it to the legislature to amend the law should a change be deemed necessary. * * *" (50 Am. Jur., *Statutes,* § 326, p. 318.)

The citation of *Welsh* v. *Campbell,* 41 Haw. 106, certainly can have no application to the interpretation of the statute. That case merely holds that the common law is a system of legal logic rather than a code of rules, and that its principles have been determined

by the social needs of the community and have changed with changes in such needs. " 'These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require.' (*Miller* v. *Monsen,* 228 Minn. 400, 37 N. W. [2d] 543, 547.)"

We do not see any such change in condition that would require an interpretation different from the *Parke* decision but, if there were, it is for the legislature to act and not for the courts to attempt to amend a legislative act by judicial decision.

Affirmed.

*John F. Alexander* for defendant-appellant.

*Herbert Y. C. Choy,* Attorney General, and *Willson C. Moore, Jr.,* Deputy Attorney General, for plaintiff-appellee.