***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 Electronically Filed
 Supreme Court
 SCWC-30438
 12-APR-2012
 08:40 AM

 IN THE SUPREME COURT OF THE STATE OF HAWAI#I

 ---o0o---

 NO. SCWC-10-0000072
 (ICA No. CAAP-10-0000072, 1DTA-10-01055)

 STATE OF HAWAI#I, Respondent/Plaintiff-Appellee,

 vs.

 KEVIN K. NESMITH, Petitioner/Defendant-Appellant.

----------------------------------------------------------------

 NO. SCWC-30438
 (ICA No. 30438, 1DTA-09-04944)

 STATE OF HAWAI#I, Respondent/Plaintiff-Appellee,

 vs.

 CHRIS F. YAMAMOTO, Petitioner/Defendant-Appellant.

 CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS

 April 12, 2012

 RECKTENWALD, C.J.,NAKAYAMA, DUFFY, AND MCKENNA, JJ.;
 WITH ACOBA, J., CONCURRING AND DISSENTING
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 OPINION OF THE COURT BY MCKENNA, J.

 In these cases consolidated for disposition, we (1) hold

that pursuant to State v. Wheeler, 121 Hawai#i 383, 219 P.3d 1170

(2009), a charge of operating a vehicle under the influence of an

intoxicant (“OVUII”) under Hawai#i Revised Statutes (“HRS”) §

291E-61(a)(1)(2007)1 must allege the requisite mens rea2 in order

to fully define the offense in unmistakable terms readily

comprehensible to persons of common understanding; (2) on the

other hand, reaffirm that an OVUII charge under HRS § 291E-

61(a)(3)(2007)3 is an absolute liability offense for which mens

rea need not be alleged or proven. We also (3) hold that the ICA

erred by relying on general intent cases to hold that mens rea

may be inferred from the allegations in an HRS § 291E-61(a)(1)

OVUII charge because under State v. Kalama, 94 Hawai#i 60, 65, 8
1
 HRS § 291E-61(a)(1) states, as it did at the time of the alleged offenses:

 A person commits the offense of operating a vehicle under
 the influence of an intoxicant if the person operates or
 assumes actual physical control of a vehicle . . . [w]hile
 under the influence of alcohol in an amount sufficient to
 impair the person’s normal mental faculties or ability to
 care for the person and guard against casualty[.]

2
 “Mens rea” is defined as follows: “As an element of criminal
responsibility: a guilty mind; a guilty or wrongful purpose; a criminal
intent. Guilty knowledge and wilfulness.” Black’s Law Dictionary 985 (6th
ed. 1990).

3
 HRS § 291E-61(a)(3) states, as it did at the time of the alleged offenses,
“A person commits the offense of operating a vehicle under the influence of an
intoxicant if the person operates or assumes actual physical control of a
vehicle . . . [w]ith .08 or more grams of alcohol per two hundred ten liters
of breath[.]”

 2
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

P.3d 1224, 1229 (2000), the distinction between general and

specific intent has been abandoned; and (4) that in Nesmith, the

ICA erred by extending HRS § 806-28 (1993)4 to the district

courts, as the plain language of HRS § 806-2 (1993) limits the

application of the criminal procedure provisions of Chapter 806

to the circuit courts. See State v. Nesmith, 125 Hawai#i 232,

237 n.9, 257 P.3d 245, 250 n.9 (App. 2011).

I. Background

 Kevin K. Nesmith (“Nesmith”) and Chris F. Yamamoto

(“Yamamoto”) were each charged by Complaint with OVUII, in

violation of HRS §§ 291E-61(a)(1) and/or (a)(3).5 Nesmith’s

charge read:

4
 HRS § 806-28 states, as it did at the time of the alleged offenses:
 The indictment need not allege that the offense was
 committed or the act done “feloniously”, “unlawfully”,
 “wilfully”, “knowingly”, “maliciously”, “with force and
 arms”, or otherwise except where such characterization is
 used in the statutory definition of the offense. Where the
 characterization is so used the indictment may employ the
 words of the statute or other words substantially of the
 same import. In alleging the transaction the indictment may
 use the nounal, adjectival, verbal, or adverbial form of the
 statutory name of the offense.

5
 Conviction for the single offense of OVUII under HRS § 291E-61 can be based
on either (or both) of HRS § 291E-61(a)(1) and/or (a)(3). See State v.
Grindles, 70 Haw. 528, 530-31, 777 P.2d 1187, 1189-90 (1989) (stating HRS §
291-4 [the predecessor statute to HRS § 291E-61] “sets forth one offense with
alternative methods of proof”: proof of driving while under the influence or
proof of blood alcohol content exceeding 0.10); see also State v. Caleb, 79
Hawai#i 336, 339, 902 P.2d 971, 974 (1995)(“Either method may be applied in
the alternative to warrant a conviction.”); State v. Mezurashi, 77 Hawai#i 94,
98, 881 P.2d 1240, 1244 (1994) (“HRS § 291-4(a) [the predecessor statute to
HRS § 291E-61(a)] provides two separate ways to prove a single offense of DUI,
both of which may rely on an intoxilyzer test result as evidence.”).

 3
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 On or about the 7th day of January, 2010, in the City and
 County of Honolulu, State of Hawaii, KEVIN K. NESMITH did
 operate or assume actual physical control of a vehicle upon
 a public way, street, road, or highway while under the
 influence of alcohol in an amount sufficient to impair his
 normal mental faculties or ability to care for himself and
 guard against casualty; and/or did operate or assume actual
 physical control of a vehicle upon a public way, street,
 road, or highway with .08 or more grams of alcohol per two
 hundred ten liters of breath, thereby committing the offense
 of Operating a Vehicle Under the Influence of an Intoxicant,
 in violation of Section 291E-61(a)(1) and/or (a)(3) of the
 Hawaii Revised Statutes. KEVIN K. NESMITH is subject to
 sentencing as a first offender in accordance with Section
 291E-61(b)(1) of the Hawaii Revised Statutes.

Yamamoto’s charge read:
 On or about the 28th day of October, 2009, in the City and
 County of Honolulu, State of Hawaii, CHRIS F. YAMAMOTO did
 operate or assume actual physical control of a vehicle upon
 a public way, street, road, or highway while under the
 influence of alcohol in an amount sufficient to impair his
 normal mental faculties or ability to care for himself and
 guard against casualty; and/or did operate or assume actual
 physical control of a vehicle upon a public way, street,
 road, or highway with .08 or more grams of alcohol per two
 hundred ten liters of breath, thereby committing the offense
 of Operating a Vehicle Under the Influence of an Intoxicant,
 in violation of Section 291E-61(a)(1) and/or (a)(3) of the
 Hawaii Revised Statutes. CHRIS F. YAMAMOTO is subject to
 sentencing as a first offender in accordance with Section
 291E-61(b)(1) of the Hawaii Revised Statutes, and/or CHRIS
 F. YAMAMOTO is subject to sentencing in accordance with
 Section 291E-61(b)(2) of the Hawaii Revised Statutes, where
 CHRIS F. YAMAMOTO committed the instant offense as a highly
 intoxicated driver, as a first offense. ‘Highly intoxicated
 driver’ means a person whose measurable amount of alcohol is
 0.15 or more grams of alcohol per one hundred milliliters or
 cubic centimeters of the person’s blood, or 0.15 or more
 grams of alcohol per two hundred ten liters of the person’s
 breath.

 In each case, defense counsel moved to dismiss the Complaint

based on the argument that the State failed to allege an

essential fact, namely the “mens rea” requirements of HRS §§

291E-61(a)(1) and (a)(3). The trial court denied the motions to

dismiss, and the parties proceeded to stipulated fact trials.

 4
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

The trial court found Nesmith and Yamamoto guilty as charged.

Specifically, Nesmith was adjudged guilty of violating “HRS [§]

291E-61(a)(1),(3),(b)(1),” and Yamamoto was adjudged guilty of

violating HRS § 291E-61(a)(1)(3)(b)(1)(2).” Both timely

appealed.

 Before the ICA, Nesmith and Yamamoto each challenged (1) the

trial court’s denial of their motions to dismiss and (2) their

convictions, on the basis that the Complaints were legally

deficient for having failed to allege mens rea. The ICA affirmed

the judgments of the trial court in a published opinion in the

Nesmith case and a summary disposition order in the Yamamoto

case, holding that mens rea need not be alleged in a Complaint

charging HRS § 291E-61(a)(1) and/or (a)(3). See Nesmith, 125

Hawai#i 232, 257 P.3d 245; and State v. Yamamoto, No. 30438 (App.

June 6, 2011) (SDO).

 First, in both Nesmith and Yamamoto, the ICA held that mens

rea is not an element of the offense of OVUII under HRS § 291E-

61(a)(3), which is an absolute liability offense. Nesmith, 125

Hawai#i at 236, 257 P.3d at 249; Yamamoto, SDO at 6. Second, in

Yamamoto, the ICA held that mens rea can be inferred from the

allegations in the charge of OVUII under HRS § 291E-61(a)(1),

which the ICA characterized as a general intent crime. Yamamoto,

 5
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

SDO at 9. In Nesmith, the ICA did not expressly characterize HRS

§ 291E-61(a)(1) as a general intent crime; rather, it relied on

general intent cases to hold that mens rea can be inferred from

the allegations in the charge of OVUII under HRS § 291E-61(a)(1).

Nesmith, 125 Hawai#i at 237-39, 257 P.3d at 250-52. Finally, in

Nesmith, the ICA expressly extended HRS § 806-28 to the district

courts. Nesmith, 125 Hawai#i at 237, n.9, 257 P.3d at 250, n.9.

The Yamamoto panel, on the other hand, expressly observed that

HRS § 806-28 does not apply to the district courts. Yamamoto,

SDO at 8. Both Nesmith and Yamamoto timely filed applications

for writ of certiorari, which we granted and hereby consolidate

for disposition.

 On certiorari, both applications contain the following first

five questions presented:

 1. Was the OVUII charge herein legally sufficient[?]
 2. Did the OVUII charge herein “fully define” the offense
 in “unmistakable terms readily comprehensible to
 persons of common understanding[?]” See State v.
 Wheeler[,] 121 Hawai#i 383, 219 P.3d 1170 (2009)[.]
 3. What are the “essential facts” that must be included
 in an OVUII charge?
 4. What mens rea, if any, is the State required to prove
 in an OVUII case?
 5. What mens rea, if any, is the State required to plead
 in an OVUII complaint?

Each’s sixth question presented can be summarized as follows:

Did the ICA gravely err in concluding (1) that OVUII based on

blood alcohol content and charged under HRS § 291E-61(a)(3) is an

 6
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

absolute liability offense; and (2) that the mental state for

OVUII under HRS § 291E-61(a)(1) can be inferred without

specification in the charge?

 Although we agree that HRS § 291E-61(a)(3) is an absolute

liability offense for which mens rea need not be alleged or

proven, we hold that the ICA erred in its holdings regarding HRS

§ 291E-61(a)(1) in three ways. First, we hold that the HRS §

291E-61(a)(1) charges as written (omitting mens rea) failed to

fully define the HRS § 291E-61(a)(1) offense in unmistakable

terms readily comprehensible to persons of common understanding.

Second, this holding rejects the ICA’s characterization of HRS §

291E-61(a)(1) as a general intent offense for which mens rea may

be inferred from the allegations in the charge. Under Kalama, 94

Hawai#i 60, 8 P.3d 1224, the distinction between general and

specific intent has been abandoned. Third, we hold that the

Nesmith majority erred by extending HRS § 806-28 to the district

courts, as the plain language of HRS § 806-2 limits the

application of the criminal procedure provisions of Chapter 806

to the circuit courts.

II. Discussion

 A criminal charge serves multiple purposes. To initiate the

criminal process, a charge must sufficiently state an offense to

 7
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

establish the court’s jurisdiction over a case. State v.

Cummings, 101 Hawai#i 139, 142, 63 P.3d 1109, 1112 (2003). The

sufficiency of a charge also implicates an accused’s rights under

the Hawai#i Constitution, article I, sections 5, 10 and 14.

First, under article I, section 5, “No person shall be deprived

of life, liberty or property without due process of law[.]”

Second, under article I, section 14, an accused is entitled to

adequate notice of the charges against him or her: “In all

criminal prosecutions, the accused shall enjoy the right . . . to

be informed of the nature and cause of the accusation[.]” Third,

under article I, section 10, an indictment must be sufficiently

specific to protect a person from being charged twice for the

same offense: “[N]or shall any person be subject for the same

offense to be twice put in jeopardy[.]”

 As to the content and form of the charge, the State is

required to charge OVUII offenses in writing. See Hawai#i Rules

of Penal Procedure (“HRPP”) Rule 7(a)(2009). “The charge shall

be a plain, concise and definite statement of the essential facts

constituting the offense charged.” HRPP Rule 7(d)(2009). “[A]

charge defective in this regard amounts to a failure to state an

offense, and a conviction based upon it cannot be sustained, for

that would constitute a denial of due process.” State v. Mita,

 8
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

124 Hawai#i 385, 390, 245 P.3d 458, 463 (2010)(citations

omitted).
 In general, “[w]here the statute sets forth with reasonable
 clarity all essential elements of the crime intended to be
 punished, and fully defines the offense in unmistakable
 terms readily comprehensible to persons of common
 understanding, a charge drawn in the language of the statute
 is sufficient.”

Wheeler, 121 Hawai#i at 393, 219 P.3d at 1180 (citations

omitted).

 In some cases, however, a charge tracking the language of

the statute defining the offense nevertheless violates an

accused’s due process rights.
 This is so because although “some statutes in our criminal
 laws so clearly and specifically define[] the offense that
 nothing more is required in [a charge] than the adoption of
 language of the statute, other statutes fail to sufficiently
 describe the crime and [a charge] couched merely in the
 language of such a statute would violate due process.”

State v. Israel, 78 Hawai#i 66, 73, 890 P.2d 303, 310

(1995)(quoting Territory v. Yoshimura, 35 Haw. 324, 328 (1940)).

 Nesmith and Yamamoto allege that their OVUII charges were

deficient for failing to allege mens rea. We agree as to the HRS

§ 291E-61(a)(1) charge, but disagree as to the HRS § 291E-

61(a)(3) charge. First, an HRS § 291E-61(a)(1) charge omitting

mens rea does not fully define the offense in unmistakable terms

readily comprehensible to persons of common understanding. As

such, Nesmith’s and Yamamoto’s HRS § 291E-61(a)(1) charges

 9
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

violated their right to be informed of the nature and cause of

the accusation. Second, the omission of mens rea in an HRS §

291E-61(a)(3) charge comports with the legislature’s intent to

make that type of OVUII offense a strict liability offense. As

such, those charges were sufficient.

 A. An “intentional, knowing, or reckless” mens rea must
 be included in a Complaint alleging violation of HRS §
 291E-61(a)(1).

 HRS § 291E-61(a)(1) states:
 Operating a vehicle under the influence of an
 intoxicant. (a) A person commits the offense of operating
 a vehicle under the influence of an intoxicant if the person
 operates or assumes actual physical control of a vehicle:
 (1) While under the influence of alcohol in an amount
 sufficient to impair the person's normal mental faculties or
 ability to care for the person and guard against casualty[.]

In order to convict a person of any criminal offense, the burden

is on the prosecution to prove the following, beyond a reasonable

doubt:

 Proof beyond a reasonable doubt. (1) Except as otherwise
 provided in section 701-115, no person may be convicted of
 an offense unless the following are proved beyond a
 reasonable doubt:
 (a) Each element of the offense;
 (b) The state of mind required to establish each element of
 the offense;
 (c) Facts establishing jurisdiction;
 (d) Facts establishing venue; and
 (e) Facts establishing that the offense was committed
 within the time period specified in section 701-108.
 (2) In the absence of the proof required by subsection (1),
 the innocence of the defendant is presumed.

HRS § 701-114 (1993). The “elements of an offense” are further

defined by statute as “such (1) conduct, (2) attendant

 10
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

circumstances, and (3) results of conduct, as: (a) Are specified

by the definition of the offense, and (b) Negative a defense

(other than a defense based on the statute of limitations, lack

of venue, or lack of jurisdiction).” HRS § 702-205 (1993).

 There is no state of mind specified within HRS § 291E-

61(a)(1) itself. As such, HRS § 702-204 applies. It states, in

relevant part, “When the state of mind required to establish an

element of an offense is not specified by the law, that element

is established if, with respect thereto, a person acts

intentionally, knowingly, or recklessly.” Further, “a state of

mind with which the defendant acts applies to all elements of the

offense, unless otherwise specified in the statute defining the

offense.” State v. Vliet, 95 Hawai#i 94, 99, 19 P.3d 42, 47

(2001)(citations omitted); see also HRS § 702-206 (1993). Thus,

in order to convict a person of violating HRS § 291E-61(a)(1),

the State must prove, beyond a reasonable doubt, (1) conduct, (2)

attendant circumstances, and the (3) results of conduct, and an

intentional, knowing, or reckless state of mind as to each of

these three elements (and prove the rest of the items listed in

HRS § 701-114).

 Nesmith and Yamamoto’s overarching argument is that if mens

rea need be proven beyond a reasonable doubt to convict a person

 11
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

of an HRS § 291E-61(a)(1) offense, then mens rea is an essential

fact under HRPP Rule 7(d) that must be alleged in the charge, in

unmistakable and readily comprehensible terms to persons of

common understanding, in order to provide the defendant fair

notice. In other words, the argument is that the “essential

facts” requirement is broader than the “essential elements”

required to be charged. No direct authority is cited for this

proposition. In any event, we do not decide this case on the

basis that HRPP Rule 7(d) requires the allegation of mens rea as

an essential fact. Rather, under Wheeler, 121 Hawai#i 383, 219

P.3d 1170, we decide this case on the more fundamental question

of whether the HRS § 291E-61(a)(1) charges provided fair notice

to Nesmith and Yamamoto of the nature and cause of the

accusation.

 In Wheeler, a defendant was charged with OVUII in violation

of HRS § 291E-61(a)(1). 121 Hawai#i at 385, 219 P.3d at 1172.

Defense counsel argued that the charge was insufficient because

it did not allege an essential element: that the defendant had

operated a vehicle on “a public way, street, road, or highway.”

121 Hawai#i at 386, 219 P.3d at 1173. This court agreed. 121

Hawai#i at 391, 219 P.3d at 1178.

 12
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 At that time, as it does now, in order to commit the offense

of OVUII under HRS § 291E-61(a)(1), a person must have operated

or assumed actual physical control of a vehicle under the

influence of alcohol in an amount sufficient to impair the

person’s normal mental faculties or ability to care for the

person and guard against casualty. Id. Although HRS § 291E-

61(a)(1) itself did not define “operate,” HRS § 291E-1 did, as

follows: “to drive or assume actual physical control of a

vehicle upon a public way, street, road, or highway[.]” Id.

(emphasis omitted).

 This court held, “Although the oral charge here tracked the

language of HRS § 291E-61, the failure of the charge to allege

that Wheeler was driving his vehicle upon a public way, street,

road, or highway at the time of the offense rendered the charge

deficient.” 121 Hawai#i at 393, 219 P.3d at 1180. This was

because the term “‘operate’ has been statutorily defined in HRS §

291E-61 in a manner that does not comport with its commonly

understood definition.” 121 Hawai#i at 394, 219 P.3d at 1181.

Compared to the dictionary meaning of “operate,” the definition

of “operate” in HRS § 291E-1 contained a “geographical limit”

that is “neither ‘unmistakable’ nor ‘readily comprehensible to

persons of common understanding.’” Id. Such a deficient charge

 13
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

would not provide fair notice. 121 Hawai#i at 395, 219 P.3d at

1182. Thus, this court affirmed the ICA’s judgment, which

vacated and remanded the case to the district court with

instructions to dismiss the charge without prejudice. 121

Hawai#i at 386, 219 P.3d at 1173.

 Similarly, in this case, at oral argument, the State argued

that any person on the street would know a charge of “operating a

vehicle under the influence of an intoxicant” to mean drunk

driving. However, that common understanding is not reflected in

the statutory framework creating the offense of OVUII under HRS §

291E-61(a)(1), under which it is a crime only if one

intentionally, knowingly, or recklessly (not negligently)

“operates or assumes actual physical control of a vehicle . . .

[w]hile under the influence of alcohol in an amount sufficient to

impair the person’s normal mental faculties or ability to care

for the person and guard against casualty.” As in Wheeler, the

OVUII offense in this case is statutorily defined as narrower

than what is commonly understood to constitute “drunk driving.”

In that sense, a charge alleging a violation of HRS § 291E-

61(a)(1) that omits the statutorily incorporated culpable states

of mind from HRS § 702-204 is not readily comprehensible to

persons of common understanding. As such, a charge omitting the

 14
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

allegation of mens rea is deficient for failing to provide fair

notice to the accused.

 We are cognizant that our case law, statutes, and court

rules have complicated the issue of just what must be included in

a charge. On one hand, the State argues that the charge need

only contain the “essential elements” of an offense, and the

“elements of an offense” are defined under HRS § 702-205 as “such

(1) conduct, (2) attendant circumstances, and (3) results of

conduct, as: (a) Are specified by the definition of the offense,

and (b) Negative a defense (other than a defense based on the

statute of limitations, lack of venue, or lack of jurisdiction).”

Missing from the recitation of “elements of an offense” is mens

rea, which the State acknowledges applies to each element of the

offense, pursuant to HRS § 702-206, and must be proven in order

to convict a person of violating HRS § 291E-61(a)(1). On the

other hand, Petitioners argue that the charge must contain “a

plain, concise and definite statement of the essential facts

constituting the offense charged,” pursuant to HRPP Rule 7(d),

which must include mens rea, because the State must prove that

fact beyond a reasonable doubt to convict a person of the offense

of HRS § 291E-61(a)(1).

 15
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 Complicating the issue further is our case precedent holding

that the omission of mens rea in a charge rendered the charge

deficient. We note that even after the adoption of the Hawai#i

Penal Code and HRS § 702-205, we struck down charges for failing

to include mens rea, characterizing mens rea as an “element” of

the offense. See State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d

1242, 1244 (1977)(“The failure of the complaint to set forth this

essential element [of intent] as defined by the statute or to

describe it with sufficient specificity so as to establish penal

liability rendered it fatally defective.”); State v. Faulkner, 61

Haw. 177, 178, 599 P.2d 285, 286 (1979)(“Intent is an essential

element of the crime of criminal attempt. . . No allegation of

intent was made.”); State v. Yonaha, 68 Haw. 586, 586, 723 P.2d

185, 185-86 (1986)(“[The charge] omitted the element of intent

which is expressly included in the statute.”). These cases are

in tension with the statutory definition of “elements of an

offense” in HRS § 702-205, which does not include mens rea.

 Given our statutory framework, it seems clear that mens rea

is not an “element of an offense” under HRS § 702-205. See also

State v. Klinge, 92 Hawai#i 577, 584, n.3, 994 P.2d 509, 516, n.3

(2000)(“[U]nder [the statute defining the offense], state of mind

is not an ‘element’ of the criminal offense.”) That conclusion

 16
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

does not end our inquiry, however. In resolving the issue of

whether mens rea must nonetheless be alleged in an HRS § 291E-

61(a)(1) charge, we note that we have previously held that

failure to allege more than just “essential elements” can be

fatal to a charge. See, e.g., Territory v. Goto, 27 Haw. 65, 102

(1923)(Peters, J., concurring)(“Failure of an indictment to state

facts sufficient to constitute an offense against the law is

jurisdictional. . . .”)(emphasis added); see also State v.

Vanstory, 91 Hawai#i 33, 44, 979 P.2d 1059, 1070 (1999)(“It is

well settled that ‘the material parts which constitute the

offense charged must be stated in the indictment, and they must

be proved in evidence[,]’ by the State beyond a reasonable

doubt.”) (emphasis added; citations omitted)(superseded by

statute on other grounds).

 State v. Elliott provides one illustration of how omission

of facts in a charge can render a charge deficient. 77 Hawai#i

309, 884 P.2d 372 (1994). In that case, this court examined the

following charge alleging resisting arrest:
 On or about the 28th day of June, 1991 in Kona, County and
 State of [Hawaii], Marian Lois Elliot attempted to prevent a
 Peace Officer acting under color of his official authority
 from effecting an arrest by using or threatening to use
 physical force against the peace officer or another thereby
 committing the offense of resisting arrest in violation of
 Section 710-1026(1)(a) [Hawaii] Revised Statutes as amended.

 17
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

77 Hawai#i at 310, 884 P.2d at 373 (emphasis omitted). The

charge stemmed from an incident in which Elliot allegedly

attempted to bite one police officer and successfully bit

another. See id. At the time of the offense, the resisting

arrest statute read:

 Resisting arrest. (1) A person commits the offense of
 resisting arrest if he intentionally prevents a peace
 officer acting under color of his official authority from
 effecting an arrest by: (a) Using or threatening to use
 physical force against the peace officer or another[.]”

77 Hawai#i at 310 n.2, 884 P.2d at 371 n.2 (emphasis omitted).

 In Elliott, the petitioner challenged the sufficiency of

this oral charge for the first time on appeal, so this court

liberally reviewed the oral charge in favor of its validity

pursuant to State v. Motta, 66 Haw. 89, 657 P.2d 1019 (1983). 77

Hawai#i at 311, 884 P.2d at 374. Even under a liberal review, we

held that the charge could not be reasonably construed to state

the offense of resisting arrest. 77 Hawai#i at 313, 884 P.2d at

376. First, the oral charge was deficient because it was unclear

which “peace officer” it referenced. 77 Hawai#i at 312, 884 P.2d

at 375. Second, the charge was also unclear as to whether the

phrase “using or threatening to use physical force” related to

the petitioner’s alleged act of trying to bite one officer or her

alleged act of successfully biting the other officer. Id.

Third, this court held, “the requisite state of mind was omitted

 18
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

from the charge and we perceive no way in which we could

reasonably construe it to charge resisting arrest or any included

offense.” 77 Hawai#i at 313, 884 P.2d at 376.

 Like Elliott, in this case, the “intentional, knowing, or

reckless” state of mind requirements, though not an “element of

an offense” under HRS § 702-205, needed to be charged in an HRS §

291E-61(a)(1) Complaint to alert the defendants of precisely what

they needed to defend against to avoid a conviction. A charge

omitting the mens rea requirements would not alert the

Petitioners that negligently operating a vehicle under the

influence of an intoxicant in an amount sufficient to impair the

person’s normal mental faculties or ability to care for the

person and guard against casualty, for instance, is not an

offense recognized under HRS § 291E-61(a)(1). In short, mens rea

must be alleged in an HRS § 291E-61(a)(1) charge.

 Lastly, we take note of two other errors in the ICA’s HRS §

291E-61(a)(1) holding. In affirming Nesmith’s and Yamamoto’s

convictions, the ICA characterized HRS § 291E-61(a)(1) as a

general intent offense (or relied on general intent cases) for

which intent may be inferred from the allegations in the charge;

and (2) the Nesmith majority extended HRS § 806-28 to the

district courts. Yamamoto, SDO at 9; Nesmith, 125 Hawai#i at

 19
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

237, n.9, 257 P.3d at 250, n.9. Each of these holdings was

erroneous.

 1. The General Intent Holding

 The Yamamoto panel held, “[I]n a charge of OVUII under HRS §

291E-61(a)(1), a general intent crime, the state of mind can be

inferred without specification in the charge.” Yamamoto, SDO at

9 (footnoting citations to State v. Kane, 3 Haw. App. 450, 457,

652 P.2d 642, 647-48 (1982); State v. Bull, 61 Haw. 62, 66, 597

P.2d 10, 13 (1979); Territory v. Tacuban, 40 Haw. 208, 212

(1953); and State v. McDowell, 66 Haw. 650, 651, 672 P.2d 554,

555 (1983)).

 The distinction between “general intent” and “specific

intent” crimes, however, no longer applies. This court noted in

2000 that, upon the adoption of the Hawai#i Penal Code in 1973,

the only relevant states of mind are intentional, knowing,

reckless, and negligent states of mind.
 [A]rguments concerning specific and general intent are no
 longer relevant. Hawai#i has adopted the [Model Penal
 Code’s] state of mind requirements, which have abandoned the
 common law concepts of “specific intent” and “general
 intent,” in favor of four defined culpable states of mind. .
 . . In that regard, this court, in applying the [Hawai#i
 Penal Code], has indicated that a state of mind with which
 the defendant acts applies to all elements of the offense,
 unless otherwise specified in the statute defining the
 offense.

Kalama, 94 Hawai#i at 65, 8 P.3d at 1229 (citations omitted).

See also State v. Pesentheiner, 95 Hawai#i 290, 300, n.10, 22

 20
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

P.3d 86, 96, n.10 (Haw. App. 2001) (“By clearly articulating the

mens rea elements utilized by the penal code, HRS § 702-206

extirpates from any analysis of guilt or innocence reference to

general or specific intent.”).

 The Nesmith majority, unlike the Yamamoto panel, did not

explicitly use the term “general intent” when it held that an

intentional, knowing, or reckless state of mind can be inferred

from the conduct alleged in an HRS § 291E-61(a)(1) charge. 125

Hawai#i at 238, 257 P.3d at 251. However, in reaching this

holding, the Nesmith majority favorably cited Kane, McDowell,

Tacuban, and State v. Torres, 66 Haw. 281, 660 P.2d 522 (1983).

125 Hawai#i at 237-38, 257 P.3d at 250-51.

 Kane and McDowell are cases in which our appellate courts

have specifically held that intent can be inferred from the

allegations in the charge for general intent crimes. Kane held,

“With a general intent crime, the statement of the act itself

implies the requisite intent.” 3 Haw. App. at 457-58, 652 P.2d

at 647 (citing Tacuban). McDowell held that possession of a

sawed-off rifle is a general intent crime; further, under HRS §

806-28, a particularized allegation of general intent in the

indictment is not required. 66 Haw. at 651, 672 P.2d at 555

(citing Kane).

 21
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 We note, however, that Torres and Tacuban are not explicitly

general intent cases. Torres held, without addressing whether

incest was a general intent crime, “Incest as charged here is an

offense where intent can be inferred because ‘sexual intercourse’

under the circumstances alleged could only be a willful act.” 66

Haw. at 289, 660 P.2d at 527. Similarly, Tacuban held, without

any discussion on general intent, “An essential ingredient of an

offense [in this case, gambling] may be alleged inferentially as

well as directly and when so alleged is sufficient[.]” 40 Haw.

at 212 (citation omitted).

 In light of the clear abrogation of the general/specific

intent distinction in Kalama, it was erroneous for the Yamamoto

panel to hold that HRS § 291E-61(a)(1) is a general intent

offense for which mens rea can be inferred from the allegations

in the charge. To the extent the Nesmith majority may have

relied on the distinction between general and specific intent in

reaching its holding, it also erred.

 2. The Extension of HRS § 806-28 to the District
 Courts

 In further support of its holding that intent can be

inferred from the allegations in an HRS § 291E-61(a)(1) charge,

the Nesmith majority noted that HRS § 806-286 does not require an
6
 See n.4, supra.

 22
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

indictment to allege a mental state, if none is specified in the

statute defining the offense. 125 Hawai#i at 237, 257 P.3d at

250. It then footnoted its extension of HRS § 806-28 to district

court proceedings (like OVUII) as follows: “Although HRS § 806-

28 refers to an ‘indictment,’ which is used to charge a felony

offense, we see no logical reason why its provisions would not

also apply to a complaint used to charge a petty misdemeanor

offense.” 125 Hawai#i at 237, n.9, 257 P.3d at 250, n.9. The

Yamamoto panel arrived at a contrary conclusion, to hold, “[T]he

provisions of HRS § 806-28 are not applicable to district court

proceedings[.]” Yamamoto, SDO at 8. Although neither Petitioner

has briefed the HRS § 806-28 issue, and although the State

concluded at oral argument that HRS § 806-28 does not apply to

district court proceedings, we address it in light of the

inconsistency it has created in the ICA’s own decisions.

 HRS § 806-2 expressly provides, “Notwithstanding any

provision of this chapter [Chapter 806: Criminal Procedure:

Circuit Courts] that the same applies to courts of record, such

provision shall not, without more, apply to district courts.”

“[T]he starting point for interpreting a statute is the language

of the statute itself.” State v. Moniz, 69 Haw. 370, 374, 742

P.2d 373, 376 (1987)(citation omitted). Here, the plain language

 23
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

of HRS § 806-2 counsels against the extension of circuit court

criminal procedure to the district courts “without more.” The

Nesmith majority did not provide a reason to apply HRS § 806-28

to the district courts beyond its observation that there was “no

logical reason” not to.

 An extension of circuit court criminal procedure to the

district courts is a result contrary to the intent of the

legislative body that drafted the statute. Legislative history

behind HRS § 806-2’s identically worded predecessor (HRS § 711-2)

reveals that criminal procedure for circuit courts was generally

not intended to apply to the district courts, when district

courts became courts of record in 1972:
 Chapter 711, “criminal procedure; circuit courts”, contains
 several provisions tying the application thereof to courts
 of record. Upon the taking effect of Act 188, Laws 1970,
 district courts will be courts of record as provided in
 section 604-17. Section 31B presents a proposed new section
 711-2 providing that the mere use of the term courts of
 record does not itself make a provision contained in chapter
 711 applicable to district courts. The title has been
 amended to include chapter 711.

H. Stand. Comm. Rep. No. 333, in 1971 House Journal, at 845.

Consequently, the Nesmith majority erred in extending HRS § 806-

28 to the district courts. We now turn to the issue of whether

mens rea must be alleged in an HRS § 291E-61(a)(3) charge.

 24
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 B. An HRS § 291E-61(a)(3) offense is an absolute
 liability offense, for which mens rea need not be
 alleged in the charge (or proven).

 As a preliminary matter, we note that the mens rea

requirements found in the Hawai#i Penal Code are not

automatically applicable to offenses defined by statutes outside

the penal code, like HRS § 291E-61. See HRS § 701-102(3)(1993)

(“The provisions of [the Hawai#i Penal Code] are applicable to

offenses defined by other statutes, unless the [Hawai#i Penal]

Code otherwise provides.”) The Hawai#i Penal Code “otherwise

provides” in HRS § 702-212(2)(1993), which sets forth an

exception to the Code’s mens rea requirement where “a legislative

purpose to impose absolute liability for such offense or with

respect to any element thereof plainly appears.” As further

discussed below, it is well established that a legislative

purpose to make HRS § 291E-61(a)(3) an absolute liability offense

plainly appears. Mens rea need not be alleged or proven to

convict a person under HRS § 291E-61(a)(3).7

 Petitioners’ argument that mens rea must be alleged in a

complaint charging OVUII under HRS § 291E-61(a)(3) is

unpersuasive. It is well established that the legislature

7
 There is no similar legislative purpose to impose absolute liability for an
HRS § 291E-61(a)(1) offense that plainly appears; therefore, the mens rea
requirements in HRS § 702-204 apply to an HRS § 291E-61(a)(1) offense, as
discussed supra.

 25
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

plainly intended to make this type of OVUII, based on blood

alcohol content, a “per se” or “absolute liability” offense, for

which no mens rea element need be proven or even alleged. “Since

1983, DUI [Driving under the Influence] has been a per se offense

under Hawaii Revised Statutes (HRS) § 291-4(a)(2) (1985) [the

predecessor statute to HRS § 291E-61(a)(3)] requiring the mere

proof of 0.10 percent or more by weight of alcohol in the

driver’s blood.” State v. Christie, 7 Haw. App. 368, 370, 764

P.2d 1245, 1246 (1988). See also Mezurashi, 77 Hawai#i at 96,

881 P.2d at 1242; State v. Young, 8 Haw. App. 145, 153-54, 795

P.2d 285, 291 (1990); State v. Wetzel, 7 Haw. App. 532, 539 n.8,

782 P.2d 891, 895 n.8 (1989).

 The “per se” addition to Hawai#i’s drunk driving laws was

prompted after Congress enacted the Alcohol Traffic Safety-

National Driver Register Act (the “Act”), which amended 23 U.S.C.

§ 408 to make available incentive grants to states that “adopt

and implement effective programs to reduce traffic safety

problems resulting from persons driving while under the influence

of alcohol.” Alcohol Traffic Safety- National Driver Register

Act of 1982, Pub. L. No. 97-364, § 101, 96 Stat. 1738, 1738

(1982). The Act provided that a state would be “eligible for a

basic grant if such State provides. . . . (C) that any person

 26
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

with a blood alcohol concentration of 0.10 percent or greater

when driving a motor vehicle shall be deemed to be driving while

intoxicated[.]” Id. at 1739 (emphasis added).

 In 1983, the Hawai#i State Legislature signaled its clear

intent to qualify for these federal funds in amending chapter

291. See S. Conf. Com. Rep. No. 999, in 1983 Senate Journal, at

1478 (“[The Joint Senate Committees on Transportation and the

Judiciary] are aware that certain federal funds are available to

the State, provided that the State’s drunk driving laws conform

to federal standards. Your Committees find that this measure

would enhance qualification for such federal funds.”); see also

H. Stand. Com. Rep. 591, in 1983 House Journal, at 1105

(“Furthermore, your Committee has received testimony from the

Department of Transportation that the state must comply with

certain federal requirements to qualify for federal grants.

These requirements and funding were enacted by Congress in an

effort to provide an incentive for states to reduce alcohol[-

]related traffic accidents.”). The House recorded its

understanding of the amendment to HRS § 291 in language tracking

the federal Act’s goals: “The defendant shall be deemed under

the influence of intoxicating liquor if he has ten-hundredths per

cent or more by weight of alcohol in his blood.” H. Stand. Com.

 27
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

Rep. No. 591, in 1983 House Journal, at 1105 (emphasis added).

The legislature then amended chapter 291 to provide: “A person

commits the offense of driving under the influence of

intoxicating liquor if: . . . (2) The person operates or assumes

actual physical control of the operation of any vehicle with 0.10

per cent or more by weight of alcohol in the person’s blood.”

1983 Haw. Sess. Laws Act 117, § 1 at 208.

 Subsequent case law supports this interpretation. See

Wetzel, 7 Haw. App. 532, 782 P.2d 891; Mezurashi, 77 Haw. 94, 881

P.2d 1240; Christie, 7 Haw. App. 368, 764 P.2d 1245.

Significantly, in reaffirming that driving under the influence of

alcohol, as measured by blood alcohol content, was a per se

offense, this court discussed the legislative history of Act 117

as follows:
 In 1983, the Legislature proposed to “establish more
 effective sanctions for driving under the influence of
 intoxicating liquor.” Sen. Conf. Comm. Rep. No. 999, in 1983
 Senate Journal, at 1477. Specifically, the Legislature
 intended that a defendant in any criminal prosecution for
 the offense of driving under the influence of intoxicating
 liquor, “shall be deemed under the influence of intoxicating
 liquor if he has ten-hundredths per cent or more by weight
 of alcohol in his blood.” Hse. Stand. Comm. Rep. No. 591, in
 1983 House Journal, at 1105. Consequently, a vehicle
 operator whose blood alcohol level exceeds 0.10 per cent is
 in violation of the DUI statute.

 We have long held that DUI is a per se offense under HRS §
 291-4(a)(2). State v. Mezurashi, 77 Haw. 94, 96, 881 P.2d
 1240, 1242 (1994); State v. Christie, 7 Haw. App. 368, 370,
 764 P.2d 1245, 1246, aff'd, 70 Haw. 158, 766 P.2d 1198
 (1988), reconsideration denied, 70 Haw. 661, 796 P.2d 1004,
 cert. denied, 490 U.S. 1067 (1989).

 28
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

Caleb, 79 Hawai#i at 339, 902 P.2d at 974 (emphasis added).

 In the context of jury instructions, the ICA once again

reaffirmed that the legislative history indicated that driving

under the influence based on blood alcohol content was a per se

offense, with reference to the absolute liability framework set

forth in HRS § 702-212:
 Defendant contends that regarding the elements of the
 HRS § 291-4(a)(2) offense, the trial court incorrectly
 refused to instruct the jury that a “finding of a mens rea
 as to the element of operating a vehicle [was required].” We
 disagree.

 HRS § 702-204 (1985) provides that when a statute is
 silent as to the state of mind required to establish an
 element of an offense, the element is established by proving
 that “a person acts intentionally, knowingly, or
 recklessly.” However, HRS § 702-212(2) (1985) states that
 the state of mind requirements do not apply to:

 A crime defined by statute other than [the Hawai#i Penal]
 Code, insofar as a legislative purpose to impose absolute
 liability for such offense or with respect to any element
 thereof plainly appears.

 By enacting HRS § 291-4(a)(2), “the legislature
 permitted proof of DUI by merely showing that a defendant
 drove a vehicle with a BAC of 0.10 percent or more.” State
 v. Wetzel, 7 Haw. App. [532, 539], 782 P.2d 891, 895 (1989)
 (footnote omitted). Thus, the legislative purpose of HRS §
 291-4(a)(2) was "to impose absolute liability for such
 offense or with respect to any element thereof," as provided
 in HRS § 702-212(2). Accordingly, we stated in State v.
 Christie, 7 Haw. App. [368, 370], 764 P.2d 1245, 1246,
 aff’d, 70 Haw. 158, 766 P.2d 1198 (1988), cert denied, [490
 U.S. 1067], 109 S. Ct. 2068, 104 L. Ed. 2d 633 (1989),
 that DUI has been “a per se offense” under HRS § 291-4(a)(2)
 since 1983.

 The trial court did not err in refusing to instruct
 the jury that a finding of mens rea was required under HRS §
 291-4(a)(2).

Young, 8 Haw. App. at 153-54, 795 P.2d at 290-91.

 29
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

 There are no substantial differences between HRS § 291-4 and

HRS § 291E-61 that would limit the current application of this

line of case law. Further, the statutory offense of DUI/OVUII,

from Territorial days to the present, has not changed much. When

the Territory of Hawai#i first established a DUI law in 1949, the

act read:

 Sec. 11721. Driving under the influence of intoxicating
 liquor. Whoever operates or assumes actual physical control
 of the operation of any vehicle while under the influence of
 intoxicating liquor shall be punished by a fine not
 exceeding one thousand dollars or by imprisonment for not
 more than one year, or both.

 Sec. 11722. Evidence of intoxication. In any criminal
 prosecution for a violation of section 11721, the amount of
 alcohol in the defendant’s blood within three hours after
 the time of the alleged violation as shown by chemical
 analysis of the defendant’s blood, urine, breath or other
 bodily substance shall be competent evidence that the
 defendant was under the influence of intoxicating liquor at
 the time of the alleged violation and shall give rise [to
 the presumption of intoxication at the time of the alleged
 violation if the defendant’s blood alcohol content was 0.15
 per cent or more, by weight of alcohol.]

Laws of the Territory of Hawaii Passed by the Twenty-Fifth

Legislature, Regular Session 1949, Act 283, § 1 at 602.

 As explained supra, in 1983, Hawai#i’s DUI law was amended

to state:
 A person commits the offense of driving under the influence
 of intoxicating liquor if: . . . (2) The person operates or
 assumes actual physical control of the operation of any
 vehicle with 0.10 per cent or more, by weight of alcohol in
 the person’s blood.

1983 Haw. Sess. Laws Act 117, § 1 at 208. Immediately before HRS

 30
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

§ 291-4 was recodified as HRS § 291E-61 (in 2000), it read as

follows:
 § 291-4 Driving under the influence of intoxicating liquor.
 (a) A person commits the offense of driving under the
 influence of intoxicating liquor if:
 . . . .
 (2) The person operates or assumes actual physical control
 of the operation of any vehicle with .08 or more grams of
 alcohol per one hundred milliliters or cubic centimeters of
 blood or .08 or more grams of alcohol per two hundred ten
 liters of breath.

Except for the consolidation of language concerning driving under

the influence of drugs, the current HRS § 291E-61(a) is nearly

identical to its predecessor:

 §291E-61 Operating a vehicle under the influence of an
 intoxicant. (a) A person commits the offense of operating a
 vehicle under the influence of an intoxicant if the person
 operates or assumes actual physical control of a vehicle:
 . . . .
 (3) With .08 or more grams of alcohol per two hundred ten
 liters of breath; or
 (4) With .08 or more grams of alcohol per one hundred
 milliliters or cubic centimeters of blood.

As such, the line of cases holding HRS § 291-4(a)(2) to be an

absolute liability offense continues to apply with the same force

to the instant appeals. The legislature is presumed to be aware

of judicial constructions of HRS § 291-4(a)(2), and it has had

abundant opportunities to amend the statute if it intended for

HRS § 291-4(a)(2) and its successor, HRS § 291E-61(a)(3), not to

constitute absolute liability offenses. See Territory v. Makaaa,

43 Haw. 237, 240 (1959). In light of the legislature’s inaction,

 31
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

we conclude that HRS § 291E-61(a)(3) remains an absolute

liability offense.8

8
 We take a moment to respond to some of assertions raised in the
Concurrence/Dissent. First, the Concurrence/Dissent states, “HRS § 291E-
61(a)(1) is not merely a regulatory statute and conviction thereunder can
result ‘in the possibility of imprisonment and condemnation[,]’ to reiterate,
construing it as a strict liability offense under these circumstances is
‘indefensible.’” Concurrence/Dissent, Section VII. The Commentary does
state, “Subsection (2) provides for an extremely limited situation. The Code
takes the general position that absolute or strict liability in the penal law
is indefensible in principle if conviction results in the possibility of
imprisonment and condemnation.” The Commentary continues, however, as
follows:

 Therefore, within the immediate context of the Penal Code,
 criminal liability must be based on culpability. However, it
 is recognized that the scope of the Penal Code is finite. In
 other codes or Titles penal statutes exist which prima facie
 impose absolute criminal liability. Subsection (2) allows
 for the imposition of such criminal liability in the case of
 crimes defined by statutes other than the Penal Code -- when
 and only when -- “a legislative purpose to impose absolute
 liability for such offense or with respect to any element
 thereof plainly appears.”

Commentary to HRS § 702-212 (emphasis added; footnotes omitted). HRS § 291E-
61(a)(3) is an offense found outside of the penal code. We believe that a
legislative purpose to impose absolute liability for HRS § 291E-61(a)(3)
plainly appears, when the legislature amended that statute to “deem” operating
a vehicle with a certain blood alcohol content to constitute driving while
under the influence.
 Second, the Concurrence/Dissent posits that, in light of the existence
of the defense of pathological intoxication found in HRS § 702-230, “it would
appear inconsistent to treat HRS § 291E-61(a)(3) as a strict liability
offense.” Concurrence/Dissent at Section VI.D. It appears that other
jurisdictions are split on this issue. State v. Gurule, 149 N.M. 599, 604,
252 P.3d 823, 828 (App. 2011)(noting jurisdictional split). Compare, e.g.,
State v. Hammond, 118 N.J. 306, 307, 314, 571 A.2d 942, 946 (1990)(holding
that the involuntary intoxication defense is not available as to the strict
liability offense of driving under the influence); State v. West, 416 A.2d 5,
7, 9 (Me. 1980)(same); People v. Teschner, 76 Ill. App. 3d 124, 126, 394
N.E.2d 893, 895 (1979)(same); with Carter v. State, 710 So.2d 110, 113 (Fla.
App. 1998)(“The fact that involuntary intoxication is available as a defense,
however, is not inconsistent with the fact that a .10 [blood alcohol] reading
means that there is impairment” based on strict liability). As such, it
remains an open question whether HRS § 702-230 is a defense available to a
defendant charged with violating HRS § 291E-61(a)(3). We do not decide the
issue here.

 32
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

There is no mens rea requirement in HRS § 291E-61(a)(3). Proof

of mens rea is not necessary to support a conviction under that

statute. An allegation of mens rea is not necessary in the

charge. The ICA did not gravely err in so concluding.

III. Conclusion

 We hold that the ICA correctly concluded that HRS § 291E-

61(a)(3) is an absolute liability offense for which no mens rea

need be alleged or proven, but that the ICA erred by (1) holding

that mens rea need not be alleged in an HRS § 291E-61(a)(1)

charge, as without such an allegation, the Complaint fails to

fully define the offense in unmistakable terms readily

comprehensible to persons of common understanding; (2)

characterizing HRS § 291E-61(a)(1) as a general intent offense

(or relying on general intent cases) to hold that mens rea may be

inferred from the allegations in the charge; and (3) by extending

HRS § 806-28 to the district courts.

 Consequently, we affirm the ICA’s judgments, which affirmed

the district court’s judgments of conviction and sentence under

HRS § 291E-61. The district court adjudged Nesmith and Yamamoto

guilty of violating both HRS § 291E-61(a)(1) and (a)(3).

Subsections (a)(1) and (a)(3) can each serve as the basis for a

conviction under HRS § 291E-61. See Grindles, 70 Haw. 528, 530-

 33
 ***FOR PUBLICATION IN WEST’S HAWAII REPORTS AND PACIFIC REPORTER***

31, 777 P.2d 1187, 1189-90; Caleb, 79 Hawai#i 336, 339, 902 P.2d

971, 974; Mezurashi, 77 Hawai#i 94, 98, 881 P.2d 1240, 1244.

Insofar as the (a)(3) charge was sufficient, and insofar as

neither Nesmith nor Yamamoto challenges the sufficiency of the

evidence as to that basis, each’s conviction still stands.

Timothy I. MacMaster for /s/ Mark E. Recktenwald
Petitioners/Defendants-
Appellants. /s/ Paula A. Nakayama

Keith M. Kaneshiro, /s/ James E. Duffy, Jr.
Delanie Prescott-Tate,
Stephen K. Tsushima, and /s/ Sabrina S. McKenna
Sonja P. McCullen for
Respondent/Plaintiff-
Appellee.

 34